Ryan A. Semerad, Esq.
Wyoming Bar No. 7-6270
**THE FULLER LAW FIRM**
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

*Attorney for Defendants Bradley H.*
*Cape, Zachary M. Smith, Phillip G.*
*Yeomans, and John W. Slowensky*

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming, <br><br> Plaintiff, <br><br> BRADLEY H. CAPE, an individual, ZACHARY M. SMITH, an individual, PHILLIP G. YEOMANS, an individual, and JOHN W. SLOWENSKY, an individual, <br><br> Defendants. | Case No. 22-cv-00067-KHR |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Bradley H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky (collectively, "Defendants"), respectfully request that this Court dismiss Plaintiff Iron Bar Holdings, LLC's ("Plaintiff" or "Iron Bar Holdings") Complaint for failure to state claims upon which relief can be granted.

/ / /

/ / /

## I.     INTRODUCTION

"[I]s it not true, if you look at the checkerboard that it would always be possible to stay on government land except where you have to cross at corners? . . . So is it not possible that Congress – you mentioned the widespread understanding that people could go anyplace they wanted to in those days without worrying about having somebody build a fence in front of them.  Is it not **likely** that Congress did not dream that there would be any problem about cutting across a corner every mile or so?"  Associate Justice Thurgood Marshall, Transcript of Oral Argument, Part I of II (held on Jan. 15, 1979) at 12, *Leo Sheep Co. v. United States*, 440 U.S. 668 (1979) (No. 77-1686), *available       at*       https://www.supremecourt.gov/oral_arguments/archived_transcripts/1978 [hereinafter, *Leo Sheep* Oral Argument Transcript (Part I of II)].

Under color of state law, Plaintiff claims that it and other private landowners like it may dominate the open range and enclose the vastness of the public domain in the American West. Plaintiff claims that private landowners alone may control who among us gets to access, enjoy, and step foot on certain federally owned public lands.  Because Plaintiff's claims depend on violations of federal laws governing the use of and access to federally owned public lands and are, accordingly, preempted by these federal laws and related federal policies, Defendants respectfully request that this Court dismiss Plaintiff's claims.

## II.     RELEVANT FACTUAL ALLEGATIONS

Plaintiff's asserted claims stem from its ownership of certain real property in Carbon County, Wyoming.  *See* Complaint (ECF No. 2) at 1-2, 2 (¶ 1), 3 (¶¶ 8, 11).  Plaintiff's real property in Carbon County, Wyoming, (the "Property"), which is sometimes referred to as the Elk Mountain Ranch, is located among a checkerboard pattern of alternating private and public lands.  *See id.* at 1-2, 4 (¶ 16).  Plaintiff alleges that, "[i]n the checkerboard area, two sections of privately-owned

real property lie diagonally adjacent to two sections of federal public land managed by [the United States Department of Interior Bureau of Land Management ('BLM')]." *Id.* at 2. This case concerns the property rights at the "common corners" shared by Plaintiff's Property and two sections of federally owned public land in the Checkerboard.

Plaintiff alleges that, on or about September 26 to September 30, 2021, Defendants "carried out a so-called 'corner crossing' by which they intentionally and knowingly traveled from real property managed by the [BLM], across Plaintiff's real property and then onto BLM-managed land in an area of Carbon County, Wyoming commonly known as the 'checkerboard.'" *Id.* at 1-2, 4 (¶ 16). Plaintiff alleges Defendants crossed the common corner, starting and ending on public land, "in order to hunt big game animals" on federally owned public land adjacent to Plaintiff's Property. *Id.* at 4 (¶¶ 16-17).

Plaintiff alleges that, "Defendants used a custom-built device to cross from one section of BLM-managed land, across Plaintiff's two sections of private land, and then onto an adjacent BLM-managed section of land." *Id.* at 4 (¶ 16). Plaintiff alleges that Defendants' "custom-built device" is a "ladder-like device" that allowed Defendants to "corner cross" from public land to public land without stepping onto the surface of Plaintiff's Property. *See id.* at 4 (¶¶ 17-20). Thus, Plaintiff alleges Defendants did not intend to remain on Plaintiff's Property or to hunt on Plaintiff's Property, but only that Defendants passed through some amount of airspace at the common corner that allegedly belongs exclusively to Plaintiff. *See id.* at 4 (¶¶ 16-20).

Plaintiff does not allege that Defendants caused any measurable or visible physical damage to the Property in corner crossing. *See generally* Complaint (ECF No. 2). Plaintiff further does not allege that Defendants constructed, created, or installed a temporary or permanent structure like a bridge, road, path, or ladder on or near the Property to allow Defendants or others to corner

cross from public land to public land at this common corner in the future. *See generally* Complaint (ECF No. 2).

Plaintiff alleges that its ownership of the Property carries with it the "right to exclusive control, use, and enjoyment" of "the airspace at the corner, above the Property." *Id.* at 4 (¶ 18). Plaintiff alleges that its rights to the airspace at the common corner includes an entitlement to "exclude others from the use of that airspace by a 'corner crossing.'" *Id.* at 4 (¶ 19). Accordingly, Plaintiff alleges that it has the right to prohibit or exclude others from accessing the diagonally adjacent and abutting section of public land across the common corner from the other section of public land—as the former may only be accessed by corner crossing from the latter. *See id.* at 1-2, 4 (¶¶ 16-21).

Plaintiff alleges that it has "fenced and/or posted" its Property at the common corner. *Id.* at 3 (¶ 13), 8 (¶ 46). Plaintiff alleges that it located several "No Trespassing" signs at the common corner "to attempt to keep unauthorized persons from entering the Property" and, presumably, corner crossing from one section of public land to the other, adjacent section of public land. *See id.* at 3 (¶ 14), 8 (¶ 46). Plaintiff does not allege any details about how the corner is fenced or posted. *Id.* at 3 (¶ 13), 8 (¶ 46). Nor does Plaintiff allege any details about the information provided to passersby on the "No Trespassing" signs about Plaintiff's dominion over the air at the common corner or Plaintiff's claimed attendant ability to control who travels onto the public lands beyond the common corner. *See id.* at 3 (¶ 14), 8 (¶ 46).

Plaintiff does not allege that it has secured authorization or permission from the BLM or the United States Department of the Interior to erect fencing, postings, or signage at this common corner shared by the Property and the federally owned public lands. *See generally* Complaint (ECF No. 2).

4

Plaintiff primarily requests a judicial declaration that Defendants and, in effect, all others may not corner cross from public land to public land at the common corners shared by two sections of federally owned public land and two sections of the Property owned by Plaintiff. *See id.* at 6 (¶¶ 30, 32, 33). Plaintiff also requests an order trespassing Defendants from the Property and restraining Defendants from "carrying out any 'corner crossings' across Plaintiff's Property." *Id.* at 7-9 (¶¶ 36, 53). Accordingly, Plaintiff seeks judicial recognition and enforcement of its claimed right to enclose and exclude others from the public lands located beyond common corners abutted by Plaintiff's Property. *See id.* at 6 (¶ 31) ("Defendants have no . . . right of access . . . upon or across Plaintiff's Property to get to adjoining public lands.").

## III.    LEGAL STANDARD

Defendants may assert, by motion, a defense that Plaintiff's Complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). While this Court accepts as true the allegations contained in a complaint, this tenet "is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim is plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Toone v. Wells Fargo Bank, NA.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678).

This Court has jurisdiction to hear and resolve this motion pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a) as this case arises under federal statutory and constitutional laws, *see*

Notice of Removal (ECF No. 1) at 4-27, and pertains to a dispute between parties of different states[1] where the amount in controversy exceeds $75,000, *id.* at 27-33.

## IV.   FEDERAL LAW PROHIBITS PLAINTIFF FROM ENCLOSING PUBLIC LANDS OR EXCLUDING OTHERS FROM THE PUBLIC DOMAIN

Federal law prohibits Plaintiff from intentionally enclosing federally owned public lands as well as excluding others from the public domain.  Because Plaintiff's claims depend entirely on the viability of legal rights that expressly conflict with these federal laws—*i.e.,* Plaintiff's claimed legal rights to prohibit others from accessing public lands from other public lands by corner crossing and to exclude others from public lands beyond the common corner shared with its Property—Plaintiff's Complaint fails to state a claim upon which relief can be granted. Accordingly, Defendants request that this Court dismiss Plaintiff's Complaint.

### a.   Private Property Rights and Congress's Plenary Power over Public Lands

Private property rights, which are predicated on state law, must yield to exercises of Congress's plenary power over federally owned public lands within the territorial boundaries of a given state or locality.  Accordingly, where Congress enacts federal legislation prohibiting conduct affecting public lands, even conduct occurring solely on private property, private actors, like Plaintiff, must comply with federal law.

"Generally speaking, state law defines property interests . . . ."  *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707 (2010) (opinion for the Court by Scalia, J.) (citing *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998)); *see also*

---

[1]Defendants recognize that the citizenship of a limited liability company is dependent on the domicile of all its members.  *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905–06 (10th Cir. 2015).  Defendants intend to file a supplement to their previously filed Notice of Removal, ECF No. 1, wherein they will supply this Court with sufficient evidence showing that none of the members of Plaintiff Iron Bar Holdings, LLC, is domiciled in the State of Missouri such that there is complete diversity of the parties.  Upon information and belief, Defendants aver that Plaintiff is a single member LLC and its sole member is its manager, Mr. Fredric Neville Eshelman, who is domiciled in North Carolina.

*N. N.M. Stockman's Ass'n v. United States Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 956 (D. N.M. 2020); *Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir. 2011) ("[W]e look to state law to determine what property rights exist . . . .").

To this end, under Wyoming state law, a person may not claim a property right or title to "unappropriated public lands lying withing the boundaries" of the State of Wyoming.  *See* Wyo. Const. art. 21, § 26, cl. 1.  Consequently, Plaintiff property right claims in this matter must flow from its title to the private sections of land comprising the Property and not from any right or privilege originating from mere proximity to the public lands adjacent to and abutting the Property. *See id.*

Through the Property Clause of Article IV of the United States Constitution, Congress possesses plenary power over federally owned public lands.  *See United States v. Bd. of Cnty. Comm'rs of Otero*, 843 F.3d 1208, 1212 (10th Cir. 2016).  In assessing the limits of Congress's plenary power, the United States Supreme Court has "repeatedly observed," *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580 (1987), that "[t]he power over the public land thus entrusted to Congress is without limitations." *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976).  In fact, Congress's powers under the Property Clause are broad enough "to reach beyond territorial limits" and regulate "conduct on private land that affects the public lands." *Id.* at 538.

While state and local governments typically share legal authority with Congress over federal land within state and local boundaries, state and local powers "must yield under the Supremacy Clause when they conflict with federal law under the Property Clause." *Bd. of Cnty. Comm'rs of Otero*, 843 F.3d at 1212.  State jurisdiction over federal land "does not extend to any matter that is not consistent with full power in the United States to protect its lands, to control their use and to prescribe in what manner others may acquire rights in them." *Wyoming v. United States*,

279 F.3d 1214, 1227 (10th Cir. 2002) (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 404 (1917)).   "If Congress so chooses, federal legislation, together with the policies and objectives encompassed therein, necessarily override and preempt conflicting state laws, policies, and objectives under the Constitution's Supremacy Clause, U.S. CONST. art. VI, cl. 2."  *Id.*

Consequently, where Congress has enacted federal legislation concerning the protection, use, or acquisition of public lands, conflicting state or local laws and regulations as well as private claims predicated on state or local laws must yield to federal law.  *Kleppe*, 426 U.S. at 543 ("A different rule would place the public domain of the United States completely at the mercy of [the State]." (quoting *Camfield v. United States*, 167 U.S. 518, 526 (1897))).

For example, in *United States v. Board of County Commissioners of Otero*, the United States sought to invalidate a New Mexico statute and local resolution aimed at authorizing a county board of commissioners to mitigate fire danger in the Lincoln National Forest without first obtaining permission from the U.S. Forest Service.  843 F.3d at 1209.  The district court granted judgment in favor of the United States on the grounds that federal laws and regulations prevail over contrary state or local laws.  *Id.*  The board appealed to the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit").  *Id.*

There, the Tenth Circuit, relying on "[b]inding precedent" concerning the plenary power of the federal government under the Property Clause, rejected the board's arguments that the federal regulations at issue deprived the state and local authorities of the ability to protect their citizens from imminent threats of extreme danger to the life and property of those same citizens.  *Id.* at 1212.  The Tenth Circuit concluded that the state law and local regulation "must yield to federal law regarding conduct on federal land."  *Id.* at 1215.

In this way, *Otero* is emblematic of the wide sweep of federal power over public lands: even state laws aimed at urgent matters of life and death must yield to contrary federal laws concerning the use, protection, and disposition of federally owned public lands. *See id.* at 1212–15.

Turning to the issues in this case, Plaintiff's private property rights must also yield to contrary federal laws concerning the use of and conduct on and affecting federally owned public lands.

### b. Plaintiff Has No Legal Right to Enclose Public Lands or Exclude Others from Public Lands

For over a century, Congress has maintained federal laws that expressly forbid any private individual or private corporation from enclosing the public domain for the purpose of monopolizing both access to and use and enjoyment of the public domain. These same federal laws also prohibit private parties from claiming the private right to exclude others from accessing the public domain. Plaintiff's claims necessarily cut against these long-standing federal prohibitions as Plaintiff seeks judicial recognition and enforcement of a perceived right to prevent others from traveling from public land to another, adjacent section of public land where the two sections meet. Because Plaintiff's claims expressly conflict with federal law, Plaintiff has not stated any claim upon which this Court can grant relief.

### i. The Unlawful Inclosures of Public Lands Act of 1885

Congress enacted The Unlawful Inclosures of Public Lands Act of 1885 (the "UIA"), codified as 43 U.S.C. §§ 1061-1065, in response to the "range wars" between cattlemen and farmers during the last half of the 19th century. *See Leo Sheep*, 440 U.S. at 688. During this tumultuous chapter in American history, cattlemen engaged in a variety of exclusionary

techniques, including strategic ownership of water sources and fencing of public lands, to yield *effective* monopolistic control over enormous swathes of public land without possessing actual legal claim or color of title to these same public lands.  *See id.* at 688–89.  In an effort to end these exclusionary practices, Congress passed the UIA to prohibit "all 'enclosures' of public lands, by whatever means."  *Camfield*, 167 U.S. at 525.

In turn, Section 1 of the UIA, 43 U.S.C. § 1061, provides:

"All inclosures of any public lands in any State or Territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, . . . are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any State or any of the Territories of the United States, without claim, color of title, or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited."

Section 3 of the UIA, 43 U.S.C. § 1063, provides:

"No person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: Provided, This section shall not be held to affect the right or title of persons, who have gone upon, improved, or occupied said lands under the land laws of the United States, claiming title thereto, in good faith."

The United States Supreme Court interpreted and applied the UIA in *Camfield v. United States*, 167 U.S. 518 (1897).  There, the Supreme Court considered a fence constructed on privately held lands that effectively enclosed some 20,000 acres of public lands.  *Id.* at 522.  The Supreme Court concluded that the reach of Congress's constitutional powers to protect and control the use of its own lands must include prohibiting "the evil of permitting persons, who owned or controlled the alternate sections [in the Checkerboard], to enclose the entire tract . . . ."  *Id.* at 524–25.  "The

inconvenience, or even damage, to the individual proprietor does not authorize an act which is in its nature a purpresture of government lands." *Id.* at 525.

To this end, in *Camfield*, the Supreme Court announced what has become the UIA test: "So long as the individual proprietor confines his enclosure to his own land, the Government has no right to complain, since he is entitled to the complete and exclusive enjoyment of it, regardless of any detriment to his neighbor; but when, under the guise of enclosing his own land, he builds a fence which is useless for that purpose, and can only have been intended to enclose the lands of the Government, he is plainly within the statute, and is guilty of an unwarrantable appropriation of that which belongs to the public at large." *Id.* at 528.  Even in declaring this test, the Court observed—earnestly or naively—that this test is "scarcely a practical question, since a separate enclosure of each section would only become desirable when the country had been settled, and roads had been built which would give access to each section." *Id.*

Several early cases following the enactment of the UIA and the *Camfield* decision further elaborated on the nature and application of the UIA.  "In *Mackay v. Uinta Development Co.*, 219 F. 116 (8th Cir. 1914) the court relied on the UIA and *Camfield* to find that livestock may not be denied access to federal lands in the Union Pacific checkerboard." *United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1509 (10th Cir. 1988), *cert. denied sub nom Lawrence v. United States*, 488 U.S. 980.  Further in *Stoddard v. United States*, 214 F. 566 (8th Cir. 1914), the court "ordered removal of a fence on private land that obstructed the free range of livestock to public land, and, like the district court here, refused to read the limitation to 'persons' into [43 U.S.C. § 1063], and concluded that the UIA 'was intended to prevent the obstruction of free passage or transit for any and all lawful purposes over public lands.'" *Bergen*, 848 F.2d at 1509 (citing *Stoddard*, 214 F. at 568–69).

More recently, in applying the UIA and *Camfield*, courts in the Tenth Circuit have continued to recognize that the UIA prohibits private landowners within the Checkerboard area of southwestern Wyoming from effectively fencing in, enclosing, obstructing free passage over, and otherwise denying access to public lands. *See Am. Wild Horse Pres. Campaign v. Jewell*, 847 F.3d 1174, 1179 (10th Cir. 2016); *United States ex rel. Bergen v. Lawrence*, 620 F. Supp. 1414, 1419 (D. Wyo. 1985), *aff'd* 848 F.2d 1502 (10th Cir. 1988) ("[I]t is not the fence itself, but its effect which constitutes the UIA violation."); *Bergen*, 848 F.2d at 1508–09; *United States v. Byers*, CIV. 98-1359 JP/LFG, 2001 U.S. Dist. LEXIS 27974, at *13-*15 (D. N.M. Mar. 26, 2001).

The UIA provides federal courts with equitable powers to enjoin private parties from enclosing or obstructing free passage or transit over or through the public lands. *See* 43 U.S.C. § 1062. The UIA also prescribes certain criminal remedies for violations. *See* 43 U.S.C. § 1064.

ii. <u>Plaintiff's Claims</u>

In its Complaint, Plaintiff states two claims for relief. First, Plaintiff requests a declaratory judgment recognizing that Plaintiff has a property right to prohibit corner crossing from public land to public land at the common corners shared by two sections of federally owned public land and two sections of the Property owned by Plaintiff. *See* Complaint (ECF No. 2) at 6 (¶¶ 30, 32, 33). From this first claim, Plaintiff states a second claim for civil trespass and alleges that Defendants damaged Plaintiff and clouded title to Plaintiff's Property by corner crossing from public land to public land at the common corner. *See id.* 5 (¶ 22), 8 (¶ 48). In sum, Plaintiff's claims amount to a request for judicial recognition and enforcement of a right to enclose the federally owned public lands at the common corner and to exclude others from accessing the public land by crossing the common corner under any circumstance.

iii.   Plaintiff's Claims are Preempted by Federal Law and Depend on Legal

Rights Plaintiff Cannot Possess

Plaintiff's claims depend on the existence of property rights that conflict with the terms of the UIA, long-standing caselaw applying the UIA, and Congress's explicit intent in enacting the UIA.  Because Plaintiff cannot possess these property rights without simultaneously violating the UIA and/or demanding without any cause the invalidation of significant parts of the UIA, Plaintiff's Complaint fails to state a claim upon which this Court can grant any relief.

Pursuant to Congress's plenary powers under the Property Clause of Article IV, federal laws and federal policies concerning the protection, control, and use of federally owned public lands located within the States, like Wyoming, "necessarily override and preempt" any conflicting state "laws, policies, and objectives."  *See Wyoming*, 279 F.3d at 1227; *see also Kleppe*, 426 U.S. at 543; *Bd. of Cnty. Comm'rs of Otero*, 843 F.3d at 1212.  To this end, Congress's powers under the Property Clause are broad enough "to reach beyond territorial limits" and regulate "conduct on private land that affects the public lands."  *Kleppe*, 426 U.S. at 538.  Consequently, private property rights, as creatures of state law, *Stop the Beach*, 560 U.S. at 707, must yield to conflicting federal laws relating to the protection, control, and use of federally owned public lands.  *Bd. of Cnty. Comm'rs of Otero*, 843 F.3d at 1212.

Pursuant to its Property Clause powers, Congress enacted the UIA as a response to the extensive efforts of cattlemen to block access to vast areas of public land.  *Leo Sheep*, 440 U.S. at 688–89.  Accordingly, the UIA prohibits all enclosures of public lands "by whatever means," *see Camfield*, 167 U.S. at 525; 43 U.S.C. § 1061, and also prohibits obstruction of "free passage or transit over or through the public lands," *Bergen*, 848 F.2d at 1508–09; 43 U.S.C. § 1063.

Upon a direct challenge to the constitutionality of the UIA as applied to private conduct occurring solely on private property—the outermost ambit of the UIA—the United States Supreme Court held that the UIA was a proper exercise of Congress's legislative powers. *See Camfield*, 167 U.S. at 528. Both the United States Supreme Court as well as the Tenth Circuit have recognized and applied the UIA to affect the property rights of private landowners insofar as these private individuals exercise those claimed rights in ways that created enclosures of public lands or obstructions to free passage or transit over or through the public lands. *See id.*; *Bergen*, 848 F.2d at 1507–09.

Therefore, Plaintiff's property rights must yield to the prescriptions and prohibitions embodied in the UIA. In particular, in exercising its property rights, Plaintiff may not enclose public lands through any means or obstruct free passage over or through the public lands. Any such enclosures or obstructions would necessarily violate the UIA and demand removal.

Nevertheless, Plaintiff's claims in the Complaint demand otherwise. First, Plaintiff expressly seeks judicial recognition and enforcement of a claim of exclusive control over the common corners shared by Plaintiff's Property and the public lands—exclusive control that would amount to both an enclosure of public lands and an obstruction to free passage or transit over or through public lands *de jure*. Second, Plaintiff expressly seeks to enforce a "right" to exclude others from the public domain by prohibiting travel from one section of public land to another, adjacent section of public land at the common corner. Because Plaintiff's claims depend on rights that conflict with the UIA and constitute violations of the UIA, Plaintiff's claims are preempted by federal law and should be dismissed.

Plaintiff's primary request for relief seeks a declaration of the various rights pertaining to the common corners in the Checkerboard shared by both privately held lands and federally owned

public lands. *See* Complaint (ECF No. 2) at 5-7 (¶¶ 23-37). Plaintiff alleges that it has the right to exclusive use, control, and enjoyment of "the airspace" above the common corners shared by its Property and federally owned public lands. *See id.* at 4 (¶ 18), 6 (¶ 28). To this end, Plaintiff claims that others may not cross from one section of public land to another, adjacent section of public land at the common corner without Plaintiff's permission or consent. *See id.* at 4 (¶ 19), 5 (¶ 26), 6 (¶ 28). Plaintiff does not allege a claim or color of title to the airspace above the common corner. *See generally* Complaint (ECF No. 2).

If true, Plaintiff's claims would mean that, in the Checkerboard, the public lands are necessarily and have always been enclosed at every common corner shared with private property. That is, even without fencing, posts, or signage, the public lands are entirely inaccessible, obstructed, and enclosed at common corners by virtue of the checkerboard land-grant pattern itself. And, most importantly, Plaintiff's claims require that the UIA had no effect whatsoever on the enclosure of or obstructions to the public lands at these common corners.

Setting the UIA aside for a moment and assuming for the sake of argument that Plaintiff's conception of the ownership of airspace is correct, Plaintiff's position immediately runs into logic problems. By virtue of its "I own the air above the surface of my land" position alone, Plaintiff cannot claim exclusive rights to the airspace above the *common* corner as the surface of the land at the *common* corner is composed of both public and private property in precisely equal measures. *See* Complaint (ECF No. 2) at 1-2, 4 (¶ 16). Instead, under Plaintiff's proposed legal framework, the airspace at the *common* corner belongs equally to Plaintiff and the public. Plaintiff could only claim exclusive rights over the airspace at the common corner if Plaintiff possessed some priority interest against the interests flowing from the public lands or some special grant of right, entitlement, or authority from the federal government. Yet, Plaintiff alleges no such special or

15

priority interest or grant of right from the federal government.  Thus, under even minimal scrutiny, Plaintiff's claim to exclusive airspace rights at the common corner collapses in on itself.

What's worse, this Court has already recognized that common corners shared by privately held lands and state and federal sections of land are not the exclusive property of the private landowner in a prior published decision that was affirmed by the Tenth Circuit.  *See Bergen*, 620 F. Supp. at 1416 ("Defendant's fence, which covers 28 miles, is physically located on private land, ***except where it crosses at the common corners of state and federal sections***, as shown on the attached diagram." (Emphasis added)).

Worse still, Plaintiff's claimed property rights at the common corner directly conflict with the express terms of the UIA.  The UIA prohibits all enclosures of any federally owned public lands, both existing before the enactment of the UIA or otherwise made after its enactment.  *See* 43 U.S.C. § 1061.  The UIA does not apply solely to fences, but all enclosures "by whatever means."  *Camfield*, 167 U.S. at 525; *Bergen*, 620 F. Supp. at 1419 ("[I]t is not the fence itself, but its effect which constitutes the UIA violation.").  The UIA further prohibits "the assertion of a right to the exclusive use and occupancy ***of any part*** of the public lands" without claim or color of title.  *See* 43 U.S.C. § 1061 (emphasis added).

To illustrate the regulatory sweep of the UIA, in the *Bergen* case, this Court found that fencing installed by the private landowner across these common corners, even where the fence was broken up by some locked and some unlocked gates, was within the ambit of the UIA's prohibitions.  *See id.* at 1419.  To that end, this Court observed that the some of the locked gates had "No Trespassing" signs on them, just like Plaintiff's alleged corner signs here, *see* Complaint (ECF No. 2) at 3 (¶ 14), and "none of the gates invite the public to come in."  *See Bergen*, 620 F. Supp. at 1419.  Nevertheless, this Court concluded that gates of any kind—locked/unlocked,

inviting/uninviting, accessible to humans or not, etc.—located at the common corners may, in effect, constitute a violation of the UIA. *See id.*

Consider *United States v. Byers*. That case focused on an area where a public road and a private fence with a gate intersected. *See* 2001 U.S. Dist. LEXIS 27974, at *3. At that intersection, the privately owned gate permitted ingress and egress through the fence. *See id.* The fence and the gate were located entirely on public land. *See id.*

Defendant Paul Byers began to lock the gate from time to time and also placed a sign reading "road closed" on the gate. *See id.* at *6. Mr. Byers admitted to both locking the gate and placing the sign and he further admitted he did not have authorization or approval from the BLM or the Department of the Interior to lock the gate or place the sign, but argued that the gate were not located on public lands. *Id.* at *14-*15. Ultimately, the federal government filed suit to enjoin Mr. Byers from unlawfully enclosing the public lands and obstructing free passage over public lands by locking the gate and placing the "road closed" sign on the gate in violation of the UIA, 43 U.S.C. §§ 1061, 1063. *See id.* at *7. The district court concluded that, because the gate is located entirely on public land, Mr. Byers's actions violated the UIA and enjoined Mr. Byers from locking the gate or placing the "road closed" sign on the gate. *Id.* at *15–*16.

Here, in more brazen defiance of the UIA, Plaintiff simply asserts that its Property itself encloses the public lands beyond the common corner because it has a right to exclusive use of the airspace above the common corner, a part of the public lands, and the attendant entitlement to exclude others from crossing through the air above the corner to access the public lands. *See* Complaint (ECF No. 2) at 4 (¶¶ 16-21). Plaintiff does not allege that the surface of the common corner is its exclusive domain; instead, Plaintiff alleges the right to exclusive control, use, and

enjoyment of "the airspace at the corner" such that it alone controls who may cross over the surface of the common corner.  *See id.* at 4 (¶¶ 18-19).

On both counts—the enclosure of the public lands at the common corner and the assertion of a right to exclusive use of a part of the public lands—Plaintiff's claims violate the UIA, *see* 43 U.S.C. § 1061, and, accordingly, are necessarily overridden by the UIA, *see Wyoming*, 279 F.3d at 1227.  Further, Plaintiff's claim that the public lands are enclosed at the common corner by its Property also violates the UIA by obstructing free passage or transit over or through the public lands, *see* 43 U.S.C. § 1063, and so must also be overridden by the UIA, *see Wyoming*, 279 F.3d at 1227.  Plaintiff cannot state a claim upon which relief can be granted when its claims are predicated on unlawful enclosures of public lands, the unlawful assertion of an exclusive right to use "any part" of the public airspace, and a permanent *de jure* obstruction to free passage or transit over or through the public lands.  *See* 43 U.S.C. §§ 1061, 1063.

Beyond the unlawful enclosures and obstructions to public lands Plaintiff's claims entail, Plaintiff's claimed entitlement to exclude others from using the airspace to corner cross from public land to public land is an active and ongoing violation of the UIA upon which no relief can be granted.  In effect, Plaintiff seeks the right to exclude others from the public domain by prohibiting corner crossing from public land to public land.  However, the plain terms of the UIA as well as binding precedent from the Tenth Circuit establish unequivocally that Plaintiff enjoys no such right.

Section 3 of the UIA provides, in relevant part, that no person or group of people "by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means . . . shall prevent or obstruct free passage or transit over or through the public lands."  43 U.S.C. § 1063.  In interpreting this section of the UIA, the United States Supreme Court recognized that "it is 'free'

passage or transit that is to be unobstructed" and "[p]assage or transit is free in the sense intended when it is open to all." *McKelvey v. United States*, 260 U.S. 353, 357 (1922). "When some withhold [passage or transit over or through the public lands] from others, whether permanently or temporarily, it is not free." *Id.* To this end, private landowners do not have a right to exclude others from the public domain. *Bergen*, 848 F.2d at 1508.

In its Complaint, Plaintiff alleges and seeks enforcement of a claimed entitlement to exclude others from using the airspace above common corners shared by Plaintiff's Property and federally owned public lands to corner cross from public land to public land. *See* Complaint (ECF No. 2) at 4 (¶¶ 16-20), 5 (¶¶ 25-26), 6 (¶¶ 28, 30). Because the only contiguous land route between some sections of the public domain in the Checkerboard occurs at the common corners, Plaintiff's alleged entitlement would constitute an unlawful obstruction to free passage or transit over or through the public lands in violation of the UIA. This Court has previously acknowledged that, "[s]urely, the free passage of hunters and their quarry is a lawful purpose for which the public may seek access to public lands." *Bergen*, 620 F. Supp. at 1417. Thus, Plaintiff's claimed entitlement to exclude others from the airspace above the common corner by corner crossing is necessarily overridden by the UIA. *See Wyoming*, 279 F.3d at 1227.

Plaintiff has no right to exclude others from the public domain. *Bergen*, 848 F.2d at 1508. This Court should not grant Plaintiff this right and, accordingly, repeal the UIA by implication. *Id.* at 1506 (citing *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). Therefore, Defendants request that this Court grant this Motion and dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

/ / /

/ / /

iv.  <u>Plaintiff Cannot Maintain a Cause of Action Predicated on UIA Violations</u>

While Plaintiff's claims are preempted by federal law and should be dismissed for that reason alone, Plaintiff's Complaint should also be dismissed because its causes of action rely on Plaintiff's illegal acts.

"[N]o court will lend its aid to one who founds a cause of action upon an immoral or illegal act." *United Food & Comm. Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 948 (10th Cir. 1989) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987).  Consequently, "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Feltner v. Casey Family Program*, 902 P.2d 206, 209 (Wyo. 1995) (quoting *Cole v. Taylor*, 301 N.W.2d 766, 768 (Iowa 1981)); *see also Oden v. Pepsi Cola Bottling Co.*, 621 So.2d 953, 954–55 (Ala. 1993); *Romero v. United States*, 658 F. App'x 376, 379 (10th Cir. 2016) (applying New Mexico law); *Inge v. McClelland*, 725 F. App'x 634, 638 (10th Cir. 2018) (same).

Plaintiff's Complaint seeks judicial recognition and enforcement of Plaintiff's intentional violations of federal law, including, *inter alia*, the installation of fencing, posts, and/or signage that encloses or obstructs access to public lands.  Plaintiff cannot violate the UIA by claiming exclusive control over who can access the public lands, on the one hand, and ask this Court to endorse Plaintiff's "unwarrantable appropriation of that which belongs to the public at large," on the other hand. *See Camfield*, 167 U.S. at 528.

For this separate reason, Defendants request this Court grant this Motion and dismiss Plaintiff's Complaint.

/ / /

/ / /

v. *Leo Sheep* Does Not Allow Plaintiff to Enclose Public Land or Exclude
   Others from Free Passage Through Public Lands

Plaintiff alleges briefly that the United States Supreme Court's decision in *Leo Sheep*
justifies its enclosure of public lands at the common corners and allows Plaintiff to obstruct free
passage or transit by others across the common corner to access the public lands.  *See* Complaint
(ECF No. 2) at 6 (¶ 31).  Plaintiff misunderstands *Leo Sheep* and misapplies it here.

*Leo Sheep* concerned whether the federal government had the power to build a road on
private land in the Checkerboard without compensating the private landowners.  440 U.S. at 669,
677–78.  The case came to the United States Supreme Court on appeal from a civil quiet title action
filed pursuant to 28 U.S.C. § 2409a wherein private landowners sought to quiet title against the
United States after the United States had cleared a dirt road extending from the county road to a
reservoir that was located past public and private lands.  *Id.* at 678.  To defend against the quiet
title action, the United States argued that it held an easement by necessity or implication under
historical common law property principles to build a road across the privately-owned lands or, in
the alternative, that the UIA prohibited private landowners from refusing "to acquiesce in a public
road over its property" without compensation.  *Id.* at 678, 684.

As to the easement by necessity or implication, the United States Supreme Court concluded
these common law equitable doctrines were unavailable to the United States because, as a
sovereign, the United States has the power of eminent domain and can obtain land through proper
use of that power.  *Id.* at 679–81.  The United States is not a party to this action.  Accordingly,
whether the United States, as a sovereign, has an easement by necessity/implication over private
lands in the Checkerboard to construct roads is equally not before this Court.  Thus, this holding
has no application here.

The United States Supreme Court further concluded that the UIA had no application to whether the United States could construct a road over private lands without compensation to the private landowners.  *See id.* at 683 (holding that the UIA was not "of any significance in this controversy").  Instead, the Supreme Court chronicled how Congress passed the UIA in response to the exclusionary practices of ranchers wherein these ranchers "found that ownership over a relatively small area might yield effective control of thousands of acres of grassland." *Id.*  At the time of the Union Pacific land grants that created the Checkerboard and later when the UIA was enacted, the Court observed, "[t]he order of the day was the open range—barbed wire had not made its presence felt—and the type of incursions on private property necessary to reach public land was not such an interference that litigation would serve any motive other than spite." *Id.* at 685–86.  The Court reasoned that nothing in the UIA either granted the United States the power to build roads over private land without compensation or demanded the acquiescence to such road construction by private landowners. *Id.* at 684–88.

The Court's analysis of the interplay between the UIA and the federal government's ability to construct a road or other structure on private land in the Checkerboard without compensation to the private landowners has no application in this case, which concerns a private landowner's efforts to exclude others from the public domain.  Even the private company litigating against the federal government in *Leo Sheep* understood that the case was not about access rights to public lands: "[T]he issue today *is not really* whether the United States or any other private party has a right of access to cross a section of land to reach an adjoining section of land."  Clyde O. Martz, Esq. on behalf of Petitioners Leo Sheep Company and Palm Livestock Company, *Leo Sheep* Oral Argument Transcript (Part I of II) at 11-12.  Thus, the Supreme Court's conclusion in *Leo Sheep*

that the UIA does not factor into whether the United States has the power to build a road over private lands in the Checkerboard without compensation also has no application here.

In *Leo Sheep*, the Supreme Court did not conclude that the UIA was unconstitutional, nor did it otherwise repeal, abrogate, or dilute the UIA.  Instead, *Leo Sheep* noted only that the UIA did not "suggest" that the federal government had the authority to construct a public road on private property without compensating the private landowner.  440 U.S. 683.  Any application of *Leo Sheep* beyond its particular facts is simply misplaced.

Indeed, the better suited guidance for this Court's analysis here comes from *Camfield v. United States*, 167 U.S. 518 (1897), *United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502 (10th Cir. 1988), and the plain language of 43 U.S.C. 1063.  These sources of law all point to one conclusion: private landowners cannot, directly or indirectly, enclose federally owned public lands in order to exclude others from the public domain.

In *Bergen*, the Tenth Circuit considered an appeal from a district court order that compelled a private landowner to remove a fence located on his private property in the Checkerboard in Wyoming on the basis that the fence enclosed federally owned public lands and violated the UIA by obstructing free and unrestricted access by pronghorn antelope to the enclosed lands.  *See* 848 F.2d at 1504.  There, the landowner relied on *Leo Sheep* to argue that the district court's order created an implied easement for antelope on his land without compensation and that the Tenth Circuit should find that the UIA is inapplicable to the landowner's fence just as the Supreme Court found the UIA inapplicable to its determination of whether the federal government could construct a road without compensation on private land in *Leo Sheep*.  *Id.* at 1505–06.  The Tenth Circuit rejected the landowner's reliance on *Leo Sheep*, reasoning that the landowner's argument would require, in effect, repealing the UIA by implication.  *Id.* at 1506.

23

Instead, following the Supreme Court's holding in *Camfield*, the Tenth Circuit recognized that the order requiring the landowner to remove this fence in order to permit free and unrestricted access to public lands did not involve taking anything from the landowner or otherwise impairing his private property rights. *Id.* at 1507. "All that [the landowner] has lost is the right to exclude others . . . from the public domain—a right he never had." *Id.* at 1508.

Even after *Leo Sheep*, the UIA remains good federal law. It continues to be enforceable. And it continues to stand for the principle that private landowners do not possess the right or privilege to enclose public lands or exclude others from the public domain. *See Bergen*, 848 F.2d at 1508. This Court should apply the law here.

/ / /

/ / /

/ / /

## V.     CONCLUSION

Plaintiff's Complaint contains only claims that directly conflict with federal laws concerning the use of and conduct affecting federally owned public lands.  Because this Court should not repeal those federal laws by implication or otherwise displace those laws to accommodate Plaintiff's preferred rendition of its property rights and entitlement to control access to federally owned public lands, Plaintiff has failed to state any claim upon which relief can be granted.  For all the reasons provided herein, Defendants respectfully request that this Court dismiss Plaintiff's Complaint.

Dated: March 28, 2022.                    THE FULLER LAW FIRM

By: */s/Ryan A. Semerad*
Ryan A. Semerad, Esq.
Wyoming State Bar No. 7-6270
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

*Attorney for Petitioners Bradley H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** was served this 28th day of March, 2022, using the Court's Next Generation (NextGen) CM/ECF filing system, on counsel of record for Plaintiff Iron Bar Holdings, LLC:

M. Gregory Weisz
PENCE AND MACMILLAN LLC
P.O. Box 765
Cheyenne, WY 82003
(307) 638-0386
(307) 634-0336 fax
gweisz@penceandmac.com

*Attorney for Plaintiff Iron Bar Holdings, LLC*

<u>/s/Ryan A. Semerad</u>
An Employee of the Fuller Law Firm