M. Gregory Weisz (Wyo. Bar #6-2934)
PENCE AND MACMILLAN LLC
P.O. Box 765
Cheyenne, WY  82003-0765
Phone:   (307) 638-0386
gweisz@penceandmac.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

| | |
|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming,<br><br>    Plaintiff,<br><br>vs.<br><br>BRADLEY H. CAPE, an individual,<br>ZACHARY M. SMITH, an individual,<br>PHILLIP G. YEOMANS, an individual, and<br>JOHN W. SLOWENSKY, an individual,<br><br>    Defendants. | Case No. 22-CV-00067-SWS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff, Iron Bar Holdings, LLC, by and through its attorney M. Gregory Weisz of Pence and MacMillan LLC, and responds in opposition to *Defendants' Motion to Dismiss*, ECF No. 4, as follows:

**INTRODUCTION**

Defendants' Memorandum in Support of Their Motion to Dismiss, ECF No. 5, starts with a quote of a question made at oral argument by Associate Justice Thurgood Marshall conducted in proceedings for Leo Sheep Co. v. United States, 440 U.S. 668 (1979).  While the question raised

1

by Associate Justice Marshall is interesting, it is irrelevant: the relevant issue is the *ruling* in Leo Sheep, which answered the rhetorical question posed by Justice Marshall in the negative. The Court ruled: (i) grants of land made under the Union Pacific Act of 1862 *did not* contain an implied reservation of an easement across the adjoining four-corners of private/public land in the "checkerboard" area of southern Wyoming, and (ii) the Unlawful Inclosures of Public Lands Act of 1885 did not govern the private landowner's "refusal to acquiesce in a public road over its property . . . ." Leo Sheep, 440 U.S. at 680-88.

Moreover, despite his question at oral argument, Associate Marshall joined the decision of the Court, a unanimous decision. As Leo Sheep noted, "[o]bviously, if odd-numbered lots are individually fenced, the access to even-numbered lots is obstructed. Yet the *Camfield* Court found that this was not a violation of the Unlawful Inclosures Act." Id. at 686. Thus, the Court rejected the federal government's claim it had a right to construct a road across public/private corners in the checkerboard east of Seminoe Reservoir in southern Carbon County, Wyoming.[1]

**STANDARD OF REVIEW**

The United States District Court for the District of Wyoming has described the standard of review applying to a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6):

> The standard of review on a motion to dismiss is well-established. To survive a motion to dismiss, a plaintiff's "complaint must contain sufficient factual matter... to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). For the claims of a complaint to meet the standard of plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that

---

[1] The Leo Sheep decision provides a thorough history of what it calls the "'checkerboard' land grant scheme." *See* Leo Sheep, 440 U.S. at 672-677. The Court's description of the background of the 1862 Union Pacific Railroad Act makes it clear Congress was well aware of the implications of "checkerboard" land grants to encourage railroad construction, having employed such land grants as far back as 1827.

2

the defendant is liable for the misconduct alleged." Id. This plausibility standard is "not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Interstate Power Sys., Inc. v. Beaty, No. 21-CV-6-NDF, 2021 WL 7210986 at *2 (D. Wyo. April 21, 2021).

Moreover,

> [w]hen ruling on a motion to dismiss for failure to state a claim, it is not the Court's function "to weigh [the] potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565-66 (10th Cir. 1991). It must accept all factual allegations in the complaint as true. Twombly, 550 U.S. at 572. The Court must also view the facts in the light most favorable to the non-moving party. Sutton v. Utah State Sch. For Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

Interstate Power Sys., Inc. v. Beaty, No. 21-CV-6-NDF, 2021 WL 7210986 at *2 (D. Wyo. April 21, 2021. Finally, as this federal district court has noted,

> In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. "[D]etailed factual allegations" are not required, but there must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949. The pleading is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* The facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." Gee v. Pacheco, 627 F.3d 1178, 1183 (10th Cir. 2010) (quoting Twombly, 127 S.Ct. at 1955).

Am. Hallmark Ins. Co. of Texas v. Ctr. St. Real Est., LLC, No. 11-CV-374-J, 2012 WL 13024004, at *1–2 (D. Wyo. May 31, 2012).

Stated differently, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). *See also* Castro v. Kondaur Cap. Corp., 541 F. App'x 833, 837 (10th Cir. 2013).

**SUMMARY OF PLAINTIFF'S COMPLAINT**

A short summary of key provisions of Plaintiff's well-pleaded Complaint for Declaratory Judgment & Civil Trespass (hereinafter the "Complaint") is in order, as Defendants' Motion ignores the trespasses for which Plaintiff seeks redress.

- In its introductory paragraph, the Complaint carefully describes that Plaintiff "seeks a declaration from the Court that Defendants committed a civil trespass *on real property owned by Plaintiff*." Complaint Introductory Statement, emphasis added.

- Throughout its body, the Complaint refers to Defendants' wrongful actions carried out against "Plaintiff's Property" or simply the "Property," which is defined as the real property owned by Plaintiff in Carbon County, Wyoming. Complaint ¶ 11.

- The Complaint specifically alleges that the Defendants committed a trespass upon *the Property*. Complaint ¶ 12.

- The Complaint specifically alleges that Plaintiff's Property is posted with No Trespassing signs "to attempt to keep unauthorized persons from entering *the Property*." Complaint ¶ 14 (emphasis added).

- The Complaint specifically alleges that Defendants "have no right, title, or interest of any type or nature *in Plaintiff's Property* . . . ." Complaint ¶ 15 (emphasis added).

- The Complaint specifically alleges that the Defendants have no right to cross the "Plaintiff's Property" to get to adjacent property. Id.

- Plaintiff asserts a right to the "exclusive control, use, and enjoyment of its Property, which includes the airspace at the corner, *above the Property*." Complaint ¶ 18 (emphasis added).

- The Complaint specifically defines what it is that Plaintiff owns: "the airspace above its real property . . . ." Complaint ¶ 19. In that same paragraph, Plaintiff alleges that it is "entitled to exclude others from the use of *that airspace* . . . ." (emphasis added).

- Defendants were able to physically access the federal public lands by crossing over Plaintiff's private property. Complaint ¶ 20.

- Plaintiff asks that the Court declare the Defendants do not have a "right to own, possess, control, use, interfere with, or cross (even temporarily) *Plaintiff's Property*." Complaint ¶ 30 (emphasis added).

- The Plaintiff specifically alleged that the "Defendants have no express or implied right of access or easement upon or across *Plaintiff's Property* . . . ." Complaint ¶ 31 (emphasis added).

- Plaintiff placed "No Trespassing" signs on its private property and alleged that Defendants' entry upon and across Plaintiff's property was intentional. Complaint ¶ 46.[2]

---

[2] Without such a posting, Wyoming law precludes criminal trespass prosecution. *See* Wyo. Stat. Ann. § 6-3-303 (a defendant must be "notified to depart or to not trespass.") In fact, each of the Defendants in this civil action are also being prosecuted by the State of Wyoming for such criminal trespass across Plaintiff's real property. *See, e.g.,* State of Wyoming v. Yeomans, Circuit Court, Second Judicial District, Carbon County, Wyoming, CT-2021-5871; State of Wyoming v. Smith, Circuit Court, Second Judicial District, Carbon County, Wyoming, CT-2021-5872; State of Wyoming v. Cape, Circuit Court, Second Judicial District, Carbon County, Wyoming, CT-2021-5869; State of Wyoming v. Slowensky, Circuit Court, Second Judicial District, Carbon County,

Thus, despite Defendants' attempt to characterize the Plaintiff as attempting to "prohibit or exclude others" from entering public property (Memo In Support of Motion to Dismiss at 4), Plaintiff's Complaint is precise, clear, and unequivocal that it seeks only to prevent the Defendants from using *Plaintiff's Property* to get to property owned by another person or entity. Moreover, the Complaint does not in any way aver that Defendants are not otherwise entitled to enter public land: they just cannot use Plaintiff's property to do so.

However, there is one statement in Defendants' Motion which with Plaintiff completely agrees, as follows:

> *Consequently, Plaintiff [sic] property right claims in this matter must flow from its title to the private sections of land comprising the Property and not from any right or privilege originating from mere proximity to the public land adjacent to and abutting the Property.*

Memo in Support of Motion to Dismiss at 7. Plaintiff agrees that Plaintiff's right to seek redress against Defendants originates from and is based upon its property rights, entirely apart from any adjacent property. Indeed, the same holds true for Defendants' defenses: they must show that they possess a right to use Plaintiff's property, separate and apart from "mere proximity to the public land adjacent to and abutting the [Plaintiff's] Property." This they cannot do.

## CIVIL TRESPASS

In Wyoming, the elements of a civil trespass, an intentional tort, are set forth in Wyoming's Civil Pattern Jury Instructions as follows:

> To establish a claim of trespass, Plaintiff must show the following by a preponderance of the evidence:
>
> 1. The Plaintiff was in possession of the property when the entry occurred, or that

---

Wyoming, CT-2021-5870. Plaintiff asks that the Court take judicial notice of such actions pursuant to Fed. R. Evid. 201.

> Plaintiff was entitled to immediate possession of the property; and
>
> 2. While Plaintiff was [the owner] [in lawful possession of] *(insert appropriate description of property)*, the Defendant intentionally [entered upon] [caused another to enter upon] [caused *[insert description of something]* to come upon] that property.
>
>> [Moreover, a jury is informed that] [t]he entry was intentional if the Defendant intended to be in that location. An entry can be intentional even if the defendant mistakenly thought [he] [she] [it] had a right to be on the property.

Wyoming Civil Pattern Jury Instructions § 21.09 (2021), (citing Bellis v. Kersey, 2010 WY 138; Seven Lakes Dev. Co., L.L.C. v. Maxson, 2006 WY 136; Edgcomb v. Lower Valley Power & Light, 922 P.2d 850 (Wyo. 1996) (quoting Restatement (Second) of Torts, §§ 157-166) (1965)); Skane v. Star Valley Ranch Ass'n, 826 P.2d 266 (Wyo. 1992); Salisbury Livestock Co. v. Colorado Cent. Credit Union, 793 P.2d 470 (Wyo. 1990); Ruby Drilling Co., Inc. v. Billingsly, 660 P.2d 377 (Wyo. 1983); Coumas v. Transcontinental Garage, 230 P.2d 748 (Wyo. 1951); Harmony Ditch Co. v. Sweeney, 222 P. 577 (Wyo. 1924); Noble & Carmody v. Hudson, 122 P. 901 (Wyo. 1912); Wilson v. Amoco Corp., 33 F.Supp. 2d 969 (D. Wyo. 1998); Restatement (Second) of Torts, § 159)).

Plaintiff's Complaint fully alleges each of these elements. Allegations concerning element No. 1 are found (at a minimum) in Complaint ¶¶ 11, 12, 14, 18, 19, 21, 39, 40, 41. Allegations concerning element No. 2 are found (at a minimum) in Complaint ¶¶ 16, 20, 43, 45 and 47.

Notably, the Wyoming Civil Pattern Jury Instructions contain a provision that deals with the situation identical to the case at bar: when a defendant contends he or she had a privilege to enter the plaintiff's property. The instruction provides as follows:

> A privileged entry is an entry that is allowed by law. The law allows entry onto the property of another [by agreement] [by consent, which may be actual or implied]

[under authority of law] [if necessary to prevent serious harm].

To determine whether the entry in this case was allowed by law, you must decide whether it is more likely true than not true that:

1. the Defendant had an agreement with the Plaintiff which authorized the Defendant to enter the property; or

2. the Plaintiff consented to the entry. Consent means that the Plaintiff said or did something to [indicate agreement to] [cause the Defendant to reasonably believe the Plaintiff agreed to] the Defendant's entry.]; or

3. a reasonable person under similar circumstances would assume consent to the entry; or

4. the Defendant entered the property under authority of law; or

5. the entry was or reasonably appeared to be necessary to prevent serious harm to [the Defendant] [the Defendant's property] [another person] [another person's property].

Wyoming Civil Pattern Jury Instructions § 21.10 (citations omitted).

Knowing that the Defendants in the case at bar would claim they had some purported right to cross Plaintiff's private property to get to an adjacent section of land, Plaintiff's Complaint specifically deals with the issues raised by this pattern jury instruction. *See* Complaint ¶¶ 14, 16, 17, 20, 21, 30, 32, 42, 44, and 51.

It is important to note that Wyoming law makes it clear a civil trespass claim focuses on whether a defendant's conduct interfered with a plaintiff's *rights* (rather than just potential damage to the real property). In Wyoming a civil "action for trespass is an action for injury to a possessory right." TZ Land & Cattle Co. v. Condict, 795 P.2d 1204, 1207 (Wyo. 1990) (a plaintiff could have asserted a civil trespass claim with respect to a defendant's alleged use of state lands leased by the plaintiff) (citations omitted)). Again relating to the sufficiency of the Complaint in light of

8

Wyoming law, Plaintiff specifically alleged that Defendants violated *Plaintiff's rights* with respect to Plaintiff's real property. Complaint ¶¶ 47, 50. Thus, in the case at bar, Defendants' contention that no physical harm was done to Plaintiff's real property is inapposite as to whether Defendants committed a trespass.

Finally, Wyoming law makes it clear that Plaintiff owns the air space above the surface of its real property. The Wyoming Statutes expressly provide that "the ownership of the space above the lands and waters of this state *is declared to be vested in the several owners of the surface beneath* subject to the right of flight described in W.S. 10-4-303." (emphasis supplied).[3] Thus, Wyoming law confirms Plaintiff's ownership of the air space above its property.

Thus, Plaintiff's Complaint plainly pleads and states a claim upon which the Court can grant relief for civil trespass. That is true with respect to both the civil trespass claim in the Complaint, but also with respect to Plaintiff's request for declaratory relief.

## UNLAWFUL INCLOSURES ACT

While Plaintiff's Complaint states a civil trespass claim under Wyoming law, Defendants argue that Plaintiff's civil trespass claim is somehow preempted by the Unlawful Inclosures of Public Lands Act, ch. 149, 23 Stat. 321, §§ 1-6 (1885), codified as amended at 43 U.S.C. §§ 1061-1066. Not only did the Leo Sheep Court reject the application of the Unlawful Inclosures Act to trespasses such as the situation in the case at bar, but Defendants have no standing to assert a violation of the Unlawful Inclosures Act, or use it as a basis for removal.

---

[3] Wyoming Stat. Ann. § 10-4-303 describes an aircraft flight servitude which applies to private property, subject to certain limitations described in the statute.

9

A.  *Motion to Remand Forthcoming*

Plaintiff advises the Court it will be filing a motion to remand this action back to Wyoming state court. Plaintiff anticipates filing such motion later this week, but had to respond to Defendants' Motion to Dismiss today.[4] While that motion will stand alone and will not be detailed in this opposition to Defendants' Motion to Dismiss, it offers insight to show that the Court should reject Defendants' argument the Unlawful Inclosures Act somehow preempts Plaintiff's state law-based civil trespass claim.

B.  *Principles of Federal Preemption Allowing Removal of State Cases to Federal Court*

A claim based on state law "may be removed to federal court in only two circumstances . . . when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8, 123 S. Ct. 2058, 2063, 156 L. Ed. 2d 1 (2003) (footnote omitted). As the Supreme Court explained, when a "federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Id. Such a claim "is then removable under 28 U.S.C. § 1441(b) . . .

---

[4] Obviously, in order for this Court to uphold removal of this action from Wyoming state court, it must have subject matter jurisdiction. It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570–71, 124 S. Ct. 1920, 1924, 158 L. Ed. 2d 866 (2004) (citing Mollan v. Torrance, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824)). Thus, a challenge to a court's "subject-matter jurisdiction can of course be raised at any time prior to final judgment." Grupo Dataflux, 541 U.S. at 571 (referring to Capron v. Van Noorden, 2 Cranch 126, 2 L. Ed. 229 (1804)). "[T]he question of subject-matter jurisdiction can be raised at any time. Niemi v. Lasshofer, 770 F.3d 1331, 1345 (10th Cir. 2014) (citing Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076–77 (10th Cir. 1999)).

." Id. As the Beneficial Natl. Bank Court explained, the Supreme Court had only found two "categories of cases" where it "has found complete pre-emption--certain causes of action under the LMRA [Labor Management Relations Act] and ERISA [Employment Retirement Income Security Act]--the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id. (other citations omitted). The Beneficial Natl. Bank Court went on to uphold removal in that case, finding that the federal National Bank Act pre-empted state law usury claims against national banks. Id. at 11.

With these principles in mind, it is clear the Unlawful Inclosures Act ("UIA") does not preempt Wyoming property law or Wyoming law civil trespass claims. First, the UIA does not provide for removal of claims based on alleged UIA violations to federal court. Second, the UIA does not displace a state-based civil trespass claim because the UIA *does not* provide any private cause of action (and therefore contains no procedures and remedies governing a private cause of action). In fact, the opposite is true.

The UIA gives *exclusive enforcement* power to the United States government. Under 43 U.S.C. § 1062, the United States Attorney is given the power to institute a civil suit "in the name of the United States" and this statute confers jurisdiction for such suits in federal district court. Thus, the UIA "does not provide for a private cause of action . . . ." Crow Tribe of Indians v. Repsis, 866 F.Supp. 520, 525 (D. Wyo. 1994). The only right afforded to a private party under the UIA is to file an affidavit with the United States Attorney asserting an alleged violation of the UIA. Id. Beyond that, parties such as Defendants in the case at bar have no other rights under the UIA.

Applying the principles from the Beneficial Natl. Bank ruling, it is thus clear the UIA does not preempt state law civil trespass claims in any way. The UIA deals not with state-law civil trespass claims, but with unlawful inclosures of federal lands, to be addressed only by a direct action by the United States government. Accordingly, the UIA cannot be said to have pre-empted a Wyoming civil trespass claim in any way.

## LEO SHEEP

As further proof that the UIA does not stand as an impediment to Plaintiff's civil trespass claim, this Court should consider Leo Sheep Co. v. United States, 440 U.S. 668, 99 S. Ct. 1403, 59 L. Ed. 2d 677 (1979). In Leo Sheep, the Supreme Court dealt with whether "the Government has an implied easement to build a road across land that was originally granted to the Union Pacific Railroad under the Union Pacific Act of 1862 . . . ." Leo Sheep, 440 U.S. at 669. As is the case with the private property owned by Plaintiff in the case at bar, Leo Sheep Co. and Palm Livestock Co. were "the Union Pacific Railroad's successors in fee to specific odd-numbered sections of land in Carbon County" Wyoming. Id. at 677-78. The real property in question was located east of Seminoe Reservoir, an "area used by the public for fishing and hunting." Id. at 679. So as to provide access for such recreational use, (after negotiations with the private landowners for the government to purchase access across the private lands failed) the government constructed "a dirt road extending from a local county road to the reservoir across both public domain lands and fee lands of the Leo Sheep Co." Id. at 678. Because of the "checkerboard" land ownership pattern "it was physically impossible to enter the Seminoe Reservoir sector from this direction [the east] without some minimum physical intrusion upon private land. Id. After the government forcibly

constructed the road across private property without consent from the landowners, they filed suit to quiet title against the United States.

In response, the United States government claimed it had an implied easement to forcibly build the road on the private property without consent under "'settled rules of property law' and by the Unlawful Inclosures of Public Lands Act of 1885." Id. at 679. The Court rejected the government's argument, and said it was "unwilling to imply rights-of-way, with the substantial impact that such implication would have on property rights granted over 100 years ago . . . ." Id. at 682. Of import to the case at bar, the Court also rejected the government's reliance on the UIA, noting that it was not "of any significance" in the controversy. Id. at 683.

Additionally, the Court expressly rejected the government's reliance on Camfield v. United States, 167 U.S. 518 (1897). Just as with the Defendants in the case at bar, the government contended that the private landowners could not refuse to allow access over their private property to reach the adjoining public lands in the checkerboard. As the Leo Sheep Court noted, the Camfield decision had "affirmed the grantee's [i.e., the private landowner] right to fence completely his own land." Id. As the Leo Sheep Court noted, "obviously, if odd-numbered lots are individually fenced, the access to the even-numbered lots is obstructed." Id. at 685. Leo Sheep noted that the Court in Camfield "found that this was not a violation of the Unlawful Inclosures Act." Id. Thus, the Court ruled that the private landowner's refusal to allow access across its property in the checkerboard was not a violation of the UIA. Id. Accordingly, the Court reversed the judgment of the United States Court of Appeals for the Tenth Circuit, thus upholding the ruling of the United States District Court for the District of Wyoming in favor of the private landowners.

13

With the clear ruling from Leo Sheep, the Defendants in the case at bar cannot claim any right to cross Plaintiff's private property to get to federal public lands in the checkerboard adjoining Plaintiff's land. Moreover, Leo Sheep makes it clear that Plaintiff's refusal to allow the Defendants to cross Plaintiff's private property at the corners is not a violation of the UIA.

## CONCLUSION

In sum, the Court should deny Defendants' Motion to Dismiss. Plaintiff has every right to pursue its civil trespass claims against Defendants, and its well-pleaded Complaint is not warranted. When accepting all of the fact allegations in the Complaint as being true and in a light most favorable to Plaintiff, Plaintiff has demonstrated plausible claims that the Defendants acted unlawfully. Defendants' reliance on the UIA is misplaced, and the UIA does not prevent Plaintiff from pursuing its civil trespass claims.

RESPECTFULLY SUBMITTED on this 11th day of April, 2022.

/s/ *Greg Weisz*
M. Gregory Weisz, Wyo. Bar No. 6-2934
PENCE AND MACMILLAN LLC
P.O. Box 765
Cheyenne, WY 82003
(307) 638-0386
(307) 634-0336 fax
gweisz@penceandmac.com
Plaintiff's Attorneys

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2022, a true and correct copy of the above and foregoing document was served by CM/ECF upon the following:

Ryan A. Semerad
The Fuller Law Firm
242 South Grant Street
Casper, WY 82601
*Defendants' Attorney*

/s/ *Greg Weisz*
Pence and MacMillan LLC