Ryan A. Semerad, Esq.
Wyoming Bar No. 7-6270
**THE FULLER LAW FIRM**
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

*Attorney for Defendants Bradley H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF WYOMING**

| | |
|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming,<br><br>        Plaintiff,<br><br>BRADLEY H. CAPE, an individual, ZACHARY M. SMITH, an individual, PHILLIP G. YEOMANS, an individual, and JOHN W. SLOWENSKY, an individual,<br><br>        Defendants. | CASE NO. **22-cv-00067-SWS** |

---

**DEFENDANTS' REPLY TO PLAINTIFF IRON BAR HOLDINGS, LLC'S RESPONSE (ECF NO. 12) IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

Defendants Bradley H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky (collectively, "Defendants"), by and through their undersigned attorney Ryan A. Semerad, of Donald L. Fuller, Attorney at Law, LLC d/b/a The Fuller Law Firm, file the following reply in support of their *Motion to Dismiss* (ECF No. 4) and in response to Plaintiff Iron Bar Holdings, LLC's ("Plaintiff") *Response in Opposition to Defendants' Motion to Dismiss* (ECF No. 12).

## I.     INTRODUCTION

*Leo Sheep* did not address the question of public access to public lands across common corners in the Checkerboard because that question was not before the Court.  Rather, the issue in *Leo Sheep* was "[w]hether **the Government** has an implied easement **to build a road** across [private] land [in the Checkerboard]."  *Leo Sheep Co. v. United States*, 440 U.S. 668, 669 (1979) (emphasis added).  The United States Supreme Court in *Leo Sheep* reasoned that the Unlawful Inclosures of Public Lands Act of 1885 (the "UIA") had no significance to this controversy.

By contrast, here, the issue before this Court concerns whether a private landowner in the Checkerboard has exclusive rights to control access to and the use of common corners shared by its land and the public lands.  This issue squarely turns on what rights of access the public possesses as to common corners in the Checkerboard when the public seeks access to public lands for a lawful purpose, like hunting.  And the plain terms of the UIA as well as the legislative purpose undergirding the UIA go to the very heart of this issue.

On this issue in the case before the Court, which does not at all concern the construction of a road by the federal government on, over, or through private lands, *cf. Leo Sheep*, 440 U.S. at 669, binding precedent from the Tenth Circuit has long established that private landowners have no right to exclude others from the public domain or to obstruct free passage or transit over or through the public lands.  As to this precedent, Plaintiff has precisely nothing to say.

Plaintiff cannot sustain this action, which seeks relief that would plainly violate the UIA and would place public access to the public domain at the mercy of private landowners.  Accordingly, for all the reasons provided previously and those spelled out here, Defendants request this Court dismiss Plaintiff's Complaint.

/ / /

## II.      DEFENDANTS HAVE STANDING TO ASSERT UIA-BASED DEFENSE

At the outset, Plaintiff avers that Defendants have no right to bring a claim or defense pursuant to the Unlawful Inclosures Act (UIA), 43 U.S.C. §§ 1061 *et seq.  See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opp.") (ECF No. 12) at 11-12. Plaintiff is wrong.

The UIA includes a statute concerning the procedure for resolving violations of its provisions. *See* 43 U.S.C. § 1062.  And it is true that this same statute prescribes different roles for the United States Attorney's Office and citizens of the United States for violations of section one of the UIA, 43 U.S.C. § 1061.  *See* 43 U.S.C. § 1062, cl. 1; *see Crow Tribe of Indians v. Repsis*, 73 F.3d 982, 993–94 (10th Cir. 1995), *overruled in part on other grounds by Herrera v. Wyoming*, 139 S. Ct. 1686, 1698 (2019).  However, this same statute does not so prescribe or limit the role of private citizens as to violations of section three of the UIA, 43 U.S.C. § 1063.  *See generally* 43 U.S.C. § 1062.  Instead, 43 U.S.C § 1062 simply provides that the federal court having jurisdiction over the locality where the land at issue is situated shall have jurisdiction "to hear and determine proceedings in equity, by writ of injunction, to restrain violations of ***the provisions*** of this act [43 USCS §§ 1061 et seq.]."  (Emphasis added).

"Under the doctrine of *expressio unius est exclusio alterius*, to express or include one thing implies the exclusion of the other."  *See United States v. Brown*, 529 F.3d 1260, 1265 (10th Cir. 2008); *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, ___, 2022 U.S. App. LEXIS 3584, at *24 (10th Cir. Feb. 9, 2022).  "[T]he notion is one of negative implication: the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced."  *Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 (10th Cir. 2003).

"The [*expressio unius*] doctrine properly applies only when the *unius* (or technically, *unum*, the thing specified) can reasonably be thought to be an expression of all that shares in the grant or prohibition involved." *Ajaj*, 25 F.4th at ___, 2022 U.S. App. LEXIS 3548, at *26 (quoting A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012)).  The *expressio unius* canon "does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).  As Justice Scalia and Bryan Garner colorfully put it, a restaurant sign saying "No dogs allowed," does not necessarily mean that pet monkeys and baby elephants are welcome. *See Ajaj*, 25 F.4th at ___, 2022 U.S. App. LEXIS 3548, at *26–*27 (citing READING LAW at 107).

Here, however, the *expressio unius* canon has a straightforward application to 43 U.S.C. § 1062's assignment of roles and responsibilities for varying UIA violations.  For violations of 43 U.S.C. § 1061, Congress prescribed that a private party may supply an affidavit to the local United States Attorney concerning an unlawful enclosure and, on the basis of that affidavit, that United States Attorney shall institute a civil suit against the party controlling the enclosure; for other violations of the UIA, the only assignment given is to the federal courts and the assignment is simple—hear and determine proceedings and restrain violations of "the provisions of this act [43 U.S.C. §§ 1061 et seq.]."  The mechanism prescribed for § 1061 violations is precise and evinces the deliberate choice of Congress.  The exclusion of § 1063 from this scheme is not the product of inadvertence or sloppy drafting.

Further, when reading 43 U.S.C. § 1061 and 43 U.S.C. § 1063 *in pari materia*, as this Court must do, the distinctions between the varying purposes and scopes of each statute support standing

for different parties to bring claims or defenses under each statute.  43 U.S.C. § 1061 concerns only "inclosures of any public lands."  Any person may come upon or observe such an enclosure and then report it to the relevant United States Attorney even if that enclosure did not affect or alter the observing person's travel or access through the public lands.  By contrast, 43 U.S.C. § 1063 is broader and reaches conduct directed at specific parties who may be the only party suffering the harm targeted by the statute.

Section 1063 targets persons or groups of persons that prevent or obstruct others from entering upon public land or freely passing over or through the public lands.  Section 1063 is not predicated on physical enclosures alone, but reaches a broad range of conduct, including threats or intimidation.  Section 1063 thus focuses on specific disputes among persons or groups of person and others where the person or group seeks to prevent or obstruct the others from freely, peaceably, and lawfully traveling over or through the public lands.

The party subject to any unlawful obstruction under § 1063 meets all the elements of ordinary standing to bring an action in federal court: this party suffers the injury in fact caused by the obstruction; this party's injury is directly traceable to the challenged conduct of the defendant—the unlawful obstruction; and, this party's injury will be redressed by a favorable judicial decision—stop unlawfully obstructing the injured party.  *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

What's more, the United States Attorney is not required to bring a suit for such "section three violations" under 43 U.S.C. § 1062.  *See Repsis*, 73 F.3d at 993–94.  So, if a party is subject to unlawful obstruction in violation of 43 U.S.C. § 1063 and, as Plaintiff asserts, that party cannot bring a claim or defense based on that violation, then the party's affirmative rights and protections under § 1063 are entirely unenforceable even though Congress gave the federal courts a specific

grant of jurisdiction to address violations of all ***the provisions*** of the UIA, including § 1063.  This cannot be a proper reading of the UIA, in part or in whole, as it would render Congress's grant of jurisdiction to address and restrain violations of all the provisions of the UIA superfluous and § 1063 redundant and itself superfluous.  *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be avoided.").

Furthermore, this reading of the UIA would forever foreclose a legal remedy for "soft" UIA violations like threats, intimidation, or other insidious conduct that forces others from freely passing through the public lands because the United States Attorney's authority is limited to seeking resolution to brick and mortar enclosures.  In *United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502 (10th Cir. 1988), the Tenth Circuit could have just told the landowner, "you can't fence out the pronghorn antelope from the public lands, but you can use sonic and ultrasonic weaponry to injure or incapacitate any animal that approaches the public lands."  While this would obviously violate § 1063, as opposed to § 1061, the United States Attorney would never be required to bring a suit and the various wildlife groups would be muzzled from ever doing anything about it.  This Court should reject this narrow and absurd reading of the UIA, § 1062, and § 1063.  *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 n.9 (10th Cir. 2001) (recognizing that courts will reject an interpretation of a statute that produces an absurd result); *United States v. Brown*, 333 U.S. 18, 27 (1948) (statutory interpretation should not lead to "patently absurd consequences").

Defendants are not asking this Court to stretch the UIA beyond recognition or permit the entry of monkeys and elephants into the federal courthouse.  Instead, Defendants ask only that this Court exercise its statutorily authorized jurisdiction to restrain violations of ***the provisions*** of the UIA, which include violations of 43 U.S.C. § 1063, no United States Attorneys required.

### III.    OWNERSHIP OF AIRSPACE AT THE COMMON CORNERS IS NOT VESTED EXCLUSIVELY WITH PLAINTIFF

Plaintiff rests the validity of its claims on a Wyoming state law prescribing that ownership of the space above the lands within the State of Wyoming are vested in the several owners of the surface beneath that space. *See* Plaintiff's Opp. (ECF No. 12) at 9 (no citation provided). Plaintiff does not address how, if its legal analysis of Wyoming state law applies without modification from conflicting federal law, its position would grant it exclusive use of the airspace above the common corner its Property shares with federally owned public lands. Further, Plaintiff entirely ignores the Supremacy Clause's mandate that contrary state laws must recede in the face of conflicting federal laws, policies, or regulations concerning the use or control of federally owned public lands.

Assuming for the sake of argument (and without conceding) that the applicable law in this case is Wyo. Stat. Ann. § 10-4-302, as Plaintiff implies, Plaintiff's argument does not answer all the questions required to state a claim for trespass or to assert exclusive dominion and control over crossings at common corners in the Checkerboard.

First, the obvious. If the airspace in Wyoming is "vested in the several owners of the surface beneath," then, of course, the airspace above the common corner—where the surface is composed of equal sections of land owned by private landowners and the federal government—is "vested" in two owners in equal measure—the relevant private landowner and the federal government. Accordingly, Plaintiff, as one such private landowner in the Checkerboard, cannot assert exclusive rights and absolute control over the airspace above the common corners it shares with the federal government's land because Plaintiff does not have exclusive, absolute ownership of the entire surface of the lands that meet at the common corner. Instead, Plaintiff owns the air

above its land, the federal government owns the air above its land, and, at the precise area where the lands meet, the airspace's ownership is a question of theoretical mathematics—likely, a nullity.

Second, the contentious. Wyoming may pass any laws it wants about airspace ownership and control. However, these states laws cannot trump contrary federal laws. Rather, they must recede where they conflict with conflicting federal laws pursuant to the United States Constitution's Supremacy Clause. *Kleppe v. New Mexico*, 426 U.S. 529, 543 (1976) ("A different rule would place the public domain of the United States completely at the mercy of [the State]." (quoting *Camfield v. United States*, 167 U.S. 518, 526 (1897))).

Wyoming's simple declaration of airspace ownership may work fine enough in the ordinary course, but, when applied to prevent or obstruct free passage over or through the public lands at common corners shared by private and federally owned sections of land in the Checkerboard, the state law is completely preempted by the UIA.

The UIA plainly prohibits any person from preventing or obstructing, even temporarily or under certain circumstances or conditions, *see McKelvey v. United States*, 260 U.S. 353, 357 (1922), free passage or transit over or through the public lands. *See* 43 U.S.C. § 1063. Wyoming's declaration of airspace rights as vested in the several owners of the surface beneath necessarily conflicts with or presents a substantial obstacle to the UIA insofar as it creates a permanent barrier to free passage over or through the public lands at common corners shared by private and public lands. Enforcement of Wyoming's law to bar the public from passing over or through the public lands is tantamount to an express violation of 43 U.S.C. § 1063 itself.

A landowner has the right to exclude others from its land. It has no corresponding right to exclude others from the public domain. *See Bergen*, 848 F.2d at 1508. If the airspace is owned by the several owners of the surface beneath, then, at the common corners in the Checkerboard,

the airspace is a part of the public lands and adjacent private landowners have no right to exclude others from that public airspace.  *See id.*

IV.  ***LEO SHEEP* DID NOT ADDRESS PUBLIC ACCESS TO PUBLIC LANDS AND DOES NOT ALLOW PLAINTIFF TO PREVENT OR OBSTRUCT FREE PASSAGE OR TRANSIT OVER OR THROUGH THE PUBLIC LANDS**

*Leo Sheep* held that the federal government does not have an implied easement to build a public road over private lands in the Checkerboard.  It did not hold address the public's access rights to public lands in the Checkerboard or whether private landowners have exclusive rights, interests, or title to the common corners in the Checkerboard such that private landowners may exclude others from the common corners.  These issues were not before the Court in *Leo Sheep*.

Plaintiff concedes that the issue in *Leo Sheep* was whether the federal government could construct a public road across private land without compensating the private landowner.  *See* Plaintiff's Opp. (ECF No. 12) at 12 (citing *Leo Sheep*, 440 U.S. at 669).  While Plaintiff minimizes the significance of that concession, this concession, along with the United States Supreme Court's acknowledgment that the UIA was not relevant to that controversy insofar as the UIA did not grant the federal government the power it asserted to construct a road on private land, makes the merits of *Leo Sheep* entirely inapplicable to the present case.  Certainly, *Leo Sheep* did not grant private landowners the power to obstruct or prevent free passage or transit over or through the public lands or otherwise abrogate, dilute, or repeal 43 U.S.C. § 1063.  *See Bergen*, 848 F.2d at 1506–07 (noting that the UIA remains the federal law and should not be repealed by implication).

The public's right of access to the public lands is entirely distinguishable from the government's claims in *Leo Sheep* as the public is not a sovereign with the power of eminent domain and the UIA was enacted to ensure the public's right of access to and use of the public

lands, not any right or interest of the federal government. *See Leo Sheep*, 440 U.S. at 683–84 (noting that Congress passed the UIA in an effort to stop certain private landowners from exercising monopolistic and exclusionary control over public lands). But the public's right of access to the public lands was not addressed in *Leo Sheep* because that question was not before the Court. *See Leo Sheep*, 440 U.S. at 669. And that question remains unanswered. *See Bergen*, 848 F.2d at 1507 n.6 (noting that the rights of access to the public lands held by others may be distinguishable from the government's case in *Leo Sheep* and reserving judgment on that question). *Leo Sheep* itself supports the idea that the public, or, at least, lawful hunters, may have broader rights of access than the federal government based on historical customs and practices of hunting on public lands and the lack of any alternative access point to these same public lands. *See Leo Sheep*, 440 U.S. at 687 n.24 (analyzing and distinguishing *Buford v. Houtz*, 133 U.S. 320, 332 (1890)).

Like the *Bergen* case, the present case does not concern whether the federal government has an easement across private lands, but instead whether private landowners in the Checkerboard have the right to exclude others from the public domain. Accordingly, just as the Tenth Circuit and this Court found in *Bergen*, *Leo Sheep* "has no applicability in this matter." *See id.* at 1507 (quoting *United States ex rel. Bergen v. Lawrence*, 620 F. Supp. 1414, 1420 (D. Wyo. 1985)).

*Leo Sheep* asked a question about the federal government's right to construct a road on private lands in the Checkerboard. It answered that question in the negative. *Leo Sheep* did not ask (or answer) any questions about the public's right to access public lands in the Checkerboard. Nor did *Leo Sheep* ask (or answer) any questions about private landowner's affirmative rights to exclude others from public lands in the Checkerboard, including the surface of the public lands and the corresponding public airspace at the common corners in the Checkerboard.

Instead, the question of private landowners' rights to exclude others from the public domain was before this Court and the Tenth Circuit in *Bergen*. Both this Court and the Tenth Circuit answered that question in the negative. Collectively, the holdings of *Leo Sheep* and *Bergen* state that the federal government cannot build a road on private land in the Checkerboard and private landowners cannot assert exclusive control or dominion over the public lands in the Checkerboard. Nothing more.

The present case is, at bottom, a trespass action aimed at an access point to public lands shared by both private and public lands. In this case, Plaintiff asks this Court to recognize its right to exclude others from this access point—the common corners its Property shares with federally owned public lands—by virtue of its ownership of the lands adjacent to this access point. Because, under *Bergen* and the UIA writ large, Plaintiff has no right to exclude others from the public domain under any circumstance, Plaintiff's assertion that its private property rights include the right to control access to and use of the common corners in the Checkerboard and its related trespass action must fail.

The common corners in the Checkerboard are a part of the public lands and, therefore, Plaintiff simply cannot exclude others from the common corner.

Dated: April 18, 2022.                     THE FULLER LAW FIRM

                                           By: */s/Ryan A. Semerad*
                                               Ryan A. Semerad, Esq.
                                               Wyoming State Bar No. 7-6270
                                               242 South Grant Street
                                               Casper, Wyoming 82601
                                               Telephone: 307-265-3455
                                               Facsimile: 307-265-2859
                                               Email: semerad@thefullerlawyers.com
                                               *Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 18th day of April, 2022, I electronically filed the foregoing instrument with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Ryan A. Semerad*
An Employee of the Fuller Law Firm