Ryan A. Semerad, Esq.
Wyoming Bar No. 7-6270
**THE FULLER LAW FIRM**
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

*Attorney for Defendants Bradley H.*
*Cape, Zachary M. Smith, Phillip G.*
*Yeomans, and John W. Slowensky*

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming, )<br><br>Plaintiff, )<br><br>vs. )<br><br>BRADLEY H. CAPE, an individual, ZACHARY M. SMITH, an individual, PHILLIP G. YEOMANS, an individual, and JOHN W. SLOWENSKY, an individual, )<br><br>Defendants. ) | CASE NO. 22-cv-00067-SWS |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND (ECF NO. 13)

---

Defendants Bradley H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky (collectively, "Defendants"), by and through their undersigned attorney Ryan A. Semerad, of Donald L. Fuller, Attorney at Law, LLC d/b/a The Fuller Law Firm, submit the following brief in opposition to Plaintiff Iron Bar Holdings, LLC's ("Plaintiff") *Motion for Remand* (ECF No. 13).

## I.      INTRODUCTION

Lurking behind and hulking over Plaintiff's state court pleadings stands a federal law behemoth: exclusive control over "common corners" in checkerboarded lands shared by private lands and federally owned public lands and, as a result, the right to access the public lands. These common corners are the only access points to 8.3 million acres of otherwise "corner locked" public lands.[1]  And federal law prohibits private landowners from obstructing free transit over or through the public lands.  Yet, Plaintiff characterizes its claim to exclusive control over the common corners its real property in Carbon County, Wyoming, shares with federally owned public lands as an ordinary question of state law and private property rights.

Plaintiff's claims necessarily raise substantial, deeply disputed questions of federal law because Plaintiff effectively seeks ownership and exclusive control over the federally owned public domain, a question expressly controlled by federal laws and assigned to the federal courts for resolution.  Plaintiff's claims intrinsically raise the issue of 'public access to public lands' and the application of federal laws prohibiting private control over the public domain.  For these reasons, Plaintiff's claims demand the resolution of federal issues of law such that this Court has federal question jurisdiction over this action.

In addition, Plaintiff's action, which pits a North Carolina limited liability company against four Missouri hunters, puts "in play" substantially more than $75,000 because Plaintiff seeks declaratory and injunctive relief concerning real property assets worth millions of dollars.  For these reasons, this Court has federal diversity jurisdiction over this case.

---

[1] *See* onXMaps.com, *The Corner-Locked Report*, (Apr. 8, 2022), *available at* https://www.onxmaps.com/onx-access-initiatives/corner-crossing-report (last accessed Apr. 24, 2022) [*hereinafter*, the "Corner-Locked Report"].  This report observes that 8.3 million acres—equivalent to 3.8 Yellowstone National Parks—of state and federal public lands are corner-locked and 49% are only one corner away from public access.

For all the reasons provided herein as well as the allegations contained in Defendants' *Petition for Removal* and Plaintiff's *Complaint*, Defendants respectfully request that this Court deny Plaintiff's request to remand this case back to the state court.

## II.    RELEVANT FACTS

Plaintiff describes this suit as a conflict between Defendants, as members of the public, and Plaintiff, as a private landowner, over public access to federally owned public lands managed by the United States Department of Interior and the Bureau of Land Management (BLM).  *See* Complaint (ECF No. 2) at 1-2.

Plaintiff is a North Carolina limited liability company registered to do business in Wyoming, *see id.* at 2 (¶ 1), with one member, Mr. Frederic N. Eshelman.  *See* Defendants' *First Supplement to Defendants' Petition for Removal* (ECF No. 11) at 2-3.  Mr. Eshelman is a resident of North Carolina.  *See id.* at 3 (¶ 11).  Defendants are individuals residing in Missouri.  *See* Complaint (ECF No. 2) at 2 (¶¶ 2-5); *Petition for Removal* (ECF No. 1) at 27 (¶¶ 134-137).  None of the members of Plaintiff are domiciled in Missouri.  *See* Complaint (ECF No. 2) at 2 (¶ 1); *First Supplement to Defendants' Petition for Removal* (ECF No. 11) at 3 (¶ 13); Plaintiff's *Memorandum in Support of Motion for Remand* ("*Memo for Remand*") (ECF No. 14) at 20-21 (making no argument and presenting no evidence against Defendants' allegation that none of the members of Plaintiff are domiciled in Missouri).

Plaintiff brought a civil action against Defendants seeking declaratory relief, an injunction, and damages.  *See* Complaint (ECF No. 2) at 5-10.  Plaintiff's claims flow from its ownership of certain real property in Carbon County, Wyoming (the "Property"), which Plaintiff identified by reference to an attachment to its Complaint, Exhibit 1.  *See id.* at 3 (¶ 11).  Plaintiff's Exhibit 1 contains a warranty deed, legal description for some forty-four (44) partial or whole sections of

land in the Checkerboard area of Carbon County, Wyoming, and a map. *See* Exhibit 1 to Complaint (ECF No. 2) at 11-15.

First, Plaintiff sought a declaratory judgment to adjudicate the relative rights and interests of Defendants, as members of the public, and Plaintiff, as a private landowner, at the common corners in the Checkerboard area of Carbon County, Wyoming, where public and private lands meet. *See id.* at 5-7. Plaintiff's position is that private landowners have exclusive ownership and control over the common corners in the Checkerboard and the public may only use the common corners to access or travel through public lands if the private landowner consents to the public's use. *See id.* at 4 (¶¶ 16-21), 6 (¶¶ 28-33). Accordingly, given that million of acres of public lands are accessible only at such common corners, *see Petition for Removal* (ECF No. 1) at 9-10 (¶¶ 36-38), 21 (¶ 89), 23-24 (¶¶ 108-115), Plaintiff seeks a judicial declaration that it has the exclusive right to control access to "corner locked" public lands adjacent to its private lands. *See* Complaint (ECF No. 2) at 4 (¶¶ 16-21), 6 (¶¶ 28-33).

Second, Plaintiff claimed that Defendants are liable for a civil trespass and damages for "corner crossing" from public land to public land at common corners shared by Plaintiff's Property. *See id.* at 7-9 (¶¶ 38-53). Plaintiff alleged that Defendants' "unauthorized entry and trespass clouds title to Plaintiff's Property . . . ." *Id.* at 8 (¶ 48). Plaintiff alleged it suffered damages exceeding $50,000.00, *id.* at 5 (¶ 22), and requested a restraining order prohibiting Defendants from corner crossing from public land to public land at common corners shared by Plaintiff's Property, *id.* at 9 (¶ 53).

## III.    LEGAL STANDARD

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court

of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Thus, to remove a case from state court to federal court, federal question or diversity jurisdiction must exist." *Gas Sensing Tech. Corp. v. Ashton*, 353 F. Supp. 3d 1192, 1200 (D. Wyo. 2018). "[B]ecause federal courts are courts of limited jurisdiction, 'there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.'" *Ashton*, 353 F. Supp. 3d at 1200 (quoting *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1155 (D. N.M. 2015)).

## IV.    THIS COURT HAS FEDERAL QUESTION JURISDICTION

Plaintiff states claims that raise and require resolution of substantial federal issues of law that Congress intended to be resolved in federal court. In particular, Plaintiff claims exclusive possession of and control over the "common corners" its Property shares with federally owned public lands such that the public has no right to enter or cross over these corners *for any reason*, including to access the adjoining public lands beyond the corner. Because federal law governs when and if private actors may control access to or obstruct free transit over or through the public lands, Plaintiff's claimed right to exclude others from the common corners, the only access points the 8.3 million acres of the public domain, sounds in federal law and demands resolution in this Court.

### a.  The Well-Pleaded Complaint Rule

Plaintiff correctly states the general rule that federal question jurisdiction under 28 U.S.C. § 1331 attaches in most cases "when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383 (2016). Because the plaintiff is the "master of the claim," the well-pleaded complaint rule provides that a plaintiff may avoid federal jurisdiction by alleging state law claims only. *See Caterpillar, Inc. v. Williams*, 482 U.S.

386, 392 (1987).  Federal defenses, including ordinary federal preemption, do not create federal question jurisdiction and allow for removal of a plaintiff's state law claims.  *See id.* at 393.

Still, this general rule has two exceptions that do not allow a plaintiff to avoid federal questions of law and, consequently, removal of plaintiff's claims to federal court.  One exception—the substantial federal question or *Grable* jurisdiction doctrine—provides that a plaintiff's state law claims may create federal question jurisdiction where the state law claims necessarily raise a substantial, disputed federal question.  *See Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203–04 (10th Cir. 2012).  Another exception—the complete preemption doctrine—provides that where a plaintiff pleads state law claims by avoiding or excluding necessary questions of federal law that completely preempt an asserted state law claim, federal question jurisdiction exists such that a federal court may uphold removal "even though no federal question appears on the face of the plaintiff's complaint."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

Accordingly, despite Plaintiff's protest that it has not expressly alleged claims created by federal law or violations of federal law, *see Memo for Remand* at 4-5, 14, Plaintiff's claims may yet be removeable pursuant to 28 U.S.C. § 1331.

### b. Plaintiff's Claims Necessarily Raise a Substantial, Actually Disputed Question of Federal Law

Plaintiff claims the exclusive right to possess, use, and control the common corners its Property shares with federally owned public lands.  Through this case, Plaintiff seeks to enforce this claimed right.  Because exclusive control of the common corners is exclusive control over access to the public domain, Plaintiff necessarily raises the federal issue of whether private

landowners may exclude the public from the public domain in this way.  Consequently, Plaintiff presents a controversy regarding the operation and effects of federal laws governing land rights.

Substantial federal question jurisdiction, known as *Grable* jurisdiction, requires that a plaintiff's claims necessarily raise or a plaintiff's right to relief necessarily depends on a substantial issue of federal law that is actually disputed and capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  *See Gunn v. Minton*, 568 U.S. 251, 258 (2013).  These factors have been expressed in the Tenth Circuit as follows: "the 'federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'"  *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, ___, 2022 U.S. App. LEXIS 3458, at *48 (10th Cir. Feb. 8, 2022) (quoting *Gunn*, 568 U.S. at 258).  Where these elements are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 251 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

Defendants and Plaintiff agree, *Petition for Removal* (ECF No. 1) at 5 (¶ 18), *Memo for Remand* (ECF No. 14) at 15, substantial federal question jurisdiction exists in only a "special and small category" of cases.  *Empire HealthChoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).  Further, Plaintiff is correct that substantial federal question jurisdiction requires the federal issue be an essential component of the plaintiff's claim or right to relief as opposed to a feature of a proposed or anticipated defense.  *See Memo for Remand* (ECF No. 14) at 16 (citing *Grable*, 545 U.S. at 314–15); *see also Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d

944, 947–48 (10th Cir. 2014).   Yet, Plaintiff's analysis falters beyond its recitation of these standards.

The Supreme Court has recognized that federal question jurisdiction does not exist simply because public lands are in dispute.  *See Shulthis v. McDougal*, 225 U.S. 561, 569–70 (1912). However, by contrast, the Supreme Court has held that a land dispute raises a federal question where it "presents a controversy regarding the operation and effect of federal laws."  *Nicodemus*, 204 F.R.D. at 485 (citing *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 506–07 (1900)).

Plaintiff's claims and its right to relief here necessarily raise and depend on federal laws concerning private control over public lands, including common corners situated on both public and private lands in the Checkerboard, as well as Defendants' rights, as members of the public and citizens of the United States, to access, use, and freely travel through the public lands for lawful purposes.  Plaintiff expressly alleges and rests its claims on the premise that the public has no rights of any kind to access, use, travel through, or cross over common corners situated on public and private lands to access adjoining public lands because private landowners who own the private lands at these corners have exclusive control over access to and use of these common corners.

Plaintiff's claims necessarily raise issues of federal law because the issues of federal law are essential elements of Plaintiff's claims.  *See Suncor Energy*, 25 F.4th at ___, 2022 U.S. App. LEXIS 3458, at *49.  Plaintiff's first claim for relief, declaratory judgment, has federal law issues as essential elements.

An essential element of Plaintiff's first claim for relief is that Plaintiff has "existing" or "genuine" rights or interests to exclusive control over and use of the airspace above the common corners its Property shares with federally owned public land and the ability to prohibit others from corner crossing to access public land beyond the common corner.  *See Memo for Remand* (ECF

No. 14) at 16-17 (citing *Complaint* (ECF No. 2) at 4 (¶¶ 18-19)).  Plaintiff must prove that it has exclusive control over who may enter or cross over these common corners, which are part of the federally owned public lands, *see* Exhibit 1 to Complaint at 15.  To prove this right or interest is vested exclusively in itself, Plaintiff must demonstrate that others, including Defendants as members of the public, may not use or access the common corner to travel over or through the public lands.  In so doing, Plaintiff must resolve applications of federal laws prohibiting private claims to exclusive control over and private obstructions to public access to public lands in its favor.  *See* 43 U.S.C. § 1061 ("[T]he assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any State or any of the Territories of the United States, without claim, color of title, or asserted right . . . is likewise declared unlawful, and hereby prohibited."); 43 U.S.C. § 1063 ("No person . . . shall prevent or obstruct . . . entry under the public land laws of the United States, or . . . free passage or transit over or through the public lands.").

Another essential element of Plaintiff's first claim for relief is that Plaintiff has presented a "justiciable controversy," *see Memo for Remand* (ECF No. 14) at 16, which, under Wyoming law, requires the parties have an actual, existing disagreement over their current rights as opposed to a *potential* disagreement about theoretical, contingent, or otherwise uncertain rights that a judgment of a court in law or equity may resolve.  *See William F. Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶¶ 10-20, 206 P.3d 722, 726–29 (Wyo. 2009).  In its Complaint, Plaintiff frames this actual, existing disagreement as "Defendants contend that they have a right to carry out the 'corner crossing,' which Plaintiff denies."  *See* Complaint (ECF No. 2) at 1-2.  Plaintiff builds on this summation by alleging that Defendants, as members of the public, have no right or ability to corner cross from public land to the adjoining public land where these sections of public land meet

Plaintiff's private lands and asking for an order or judgment declaring as much. *See id.* at 6 (¶¶ 30-33).

The court deciding Plaintiff's case, then, must decide *both* whether Plaintiff has or may exercise a private property right to exclude the public from the common corners shared by Plaintiff's private land and the federally owned public lands *and* whether Defendants as members of the public have any rights, interests, or abilities to enter or cross through these common corners to access public lands. To this end, Plaintiff must prove *both* that it has the affirmative right to exclude others from the common corners *and* that Defendants and the public at-large have no right to enter or cross through these common corners. Plaintiff expressly alleges as much. *See* Complaint (ECF No. 2) at 6 (¶ 31).

These common corners are, according to Plaintiff's allegations and its attachment to its Complaint, situated equally on federally owned public lands and private lands. *See id.* at 4 (¶ 16), 15. Federal law governs whether private parties may exclude others from the public domain. *See* 43 U.S.C. § 1063. Thus, Plaintiff's claims necessarily raise the federal issue of whether Plaintiff may exercise exclusive control over and exclude others from the common corner and success on these claims depends on a resolution of the federal question in Plaintiff's favor.

Plaintiff's second claim, civil trespass, also raises questions of federal law in its essential elements. Plaintiff must show that it had an exclusive possessory right in the air above the common corner at the time of Defendants' alleged entry through or over the common corner. *See Skane v. Star Valley Ranch Ass'n*, 826 P.2d 266, 268–69 (Wyo. 1992); *see also Memo for Remand* (ECF No. 14) at 16; Plaintiff's *Response in Opposition to Defendants' Motion to Dismiss* ("Opp. to Motion to Dismiss") (ECF No. 12) at 6-7. The "exclusivity" of this claimed possessory right is an essential element of Plaintiff's state civil trespass claim. *See Edgcomb v. Lower Valley Power &*

*Light*, 922 P.2d 850, 859 (Wyo. 1996).  To prove this essential element and establish a *prima facie* case for civil trespass, Plaintiff must then show that Defendants, as members of the public, do not have an equal possessory right to the common corner.  *See id.*; *see also* Complaint (ECF No. 2) at 7 (¶ 42).  Given that the common corner is both a part of the public domain and the only access point to much of the public domain, whether the public has a possessory right to the common corner such that it may access, enter, or cross over the common corner to reach adjoining public lands depends on federal laws prohibiting private exclusion of others from the public domain.  *See* 43 U.S.C. §§ 1061, 1063.

Because the essential elements and success of Plaintiff's claims necessarily raise and depend upon resolution of federal law, this case satisfies the "necessarily raised" element of *Grable*/substantial federal question jurisdiction.

The "actually disputed" element of *Grable* jurisdiction is easily met here.  In fact, ironically, Plaintiff does not dispute this element.  *See generally Memo for Remand* (ECF No. 14) at 14-19.

Plaintiff's first claim requires an actual controversy as an essential element, *see id.* at 16; *William F. Ranch, LLC*, ¶¶ 10-20, 206 P.3d at 726–29, and Plaintiff describes that dispute in this case as whether Defendants, as members of the public, may corner cross at corners shared by Plaintiff's Property and federally owned public lands to access the adjoining public lands.  *See* Complaint (ECF No. 2) at 1-2, 5-6 (¶¶ 26-33).  Plaintiff specifically alleges that Defendants claim a right to corner cross to access public lands beyond the common corner, *id.* at 2, and alleges that the public has no right to corner cross due to the public's rights to be on public lands, *see id.* at 7 (¶ 44).  Thus, Plaintiff puts in dispute, through its own allegations, whether the public has a legal right to corner cross to access public lands and whether private landowners have a legal right to

10

exclude the public from the common corners even where the public only seeks access public lands. Accordingly, the federal laws describing the public's rights to access or use federally owned public lands and private landowners' rights to exclude the public from public lands or to obstruct access to public lands are actually disputed and form the heart of the controversy here. *See* 43 U.S.C. §§ 1061, 1063; *McKelvey v. United States*, 260 U.S. 353, 357 (1922) (holding that 43 U.S.C. § 1063 demands that "it is 'free' passage or transit that is to be unobstructed" and "[p]assage is free in the sense intended when it is open to all.").

The federal issues raised by Plaintiff's claims are substantial because resolution of these claims here—in favor of Plaintiff as a private landowner or Defendants as members of the public— will decisively control whether the public may cross common corners shared by private and federally owned public lands to reach adjoining public lands for lawful purposes in every case. *See* The Corner-Locked Report (noting that the legal status of corner crossing has never been clearly settled and the legality or illegality of corner crossing alone affects access to 8.3 million acres of public land).

Plaintiff points to four factors that inform whether a federal issue is "substantial" in the *Grable* jurisdiction sense of the word. *See Memo for Remand* (ECF No. 14) at 17 (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007)). Plaintiff is correct that these factors have been identified as relevant considerations for *Grable* substantiality, but Plaintiff incorrectly suggests that these factors are exclusive and dispositive of the substantiality question and gives the analysis only a superficial and self-serving once-over. *See id.* at 17-19.

The Supreme Court has identified four aspects of a case that affect its *Grable* jurisdiction substantiality. *See Mikulski*, 501 F.3d at 570 (citing *Empire HealthChoice*, 547 U.S. at 699–700). These factors include "(1) whether the case includes a federal agency, and particularly, whether

that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Id.* However, no single factor is dispositive and other factors may be applicable in a given case. *See id.*

Here, the federal agency factor has some relevance as the federally owned public lands are managed by a federal agency, the Department of the Interior and/or BLM. *See* Complaint (ECF No. 2) at 1-2. At this stage, neither the Department of the Interior nor the BLM are parties, however. *See id.* at 1-3.

The federal question in this case is important. Whether federal laws prohibiting private parties from obstructing others from accessing public lands and ensuring public access to public lands apply to permit public corner crossing to access public lands and to stop private efforts to block corner crossing affects access to millions of acres of public land and some 11,000 private landowners across eleven (11) states. *See* The Corner-Locked Report; *Petition for Removal* (ECF No. 1) at 23-24 (¶¶ 108-111) (discussing J.W. Sheridan, Comment, *The Legal Landscape of America's Landlocked Public Lands*, 37(2) U. CAL. L.A. J. OF ENVTL. L. & POL'Y 229, 234–35 (2019)). However the question is answered, both the question and the answer have sweeping effects across much of the country for the public, for private landowners, and for the public lands.

The federal question is not incidental to the outcome in this case, but rather goes to the core of the dispute. Plaintiff's claims rise or fall depending on whether it may permissibly enclose and control access to federally owned public lands.

The decision as to these federal issues will control whether the public may access public lands beyond common corners by corner crossing in every future case (unless Congress passes new or different laws) because the present controversy is not fact-bound and situation-specific as Plaintiff alleges broadly that no member of the public has the right to enter or cross over, even temporarily or without contacting the surface of the adjacent private lands, the common corners in the Checkerboard *for any reason*.  *See* Complaint (ECF No. 2) at 3-4 (¶¶ 15-21), 6 (¶¶ 30-33). While the facts of this case may be unique in that Defendants allegedly used a ladder to step from public land, over the common corner, to reach the adjoining public land, *see id.* at 1-2, 3-4 (¶¶ 15-17), the federal questions produced and necessitated by these facts would have uniform application to every kind of public entry on, through, or over the common corners to reach the public lands beyond.

Finally, the substantial federal questions necessarily raised by and actually disputed in Plaintiff's claims concerning public access to common corners to reach adjoining public lands for lawful purposes are capable of resolution in federal court without disrupting the congressionally approved balance of federal and state powers and interests.  This is so because Congress has already specifically granted federal courts with jurisdiction to adjudicate a range of disputes over private efforts to enclose or obstruct access to public lands.  *See* 43 U.S.C. § 1062.

Plaintiff attempts to dismiss the federal questions inherent in its claims by arguing that the public ownership of the other sections of land making up the common corner is irrelevant to the jurisdictional inquiry.  *See Memo for Remand* (ECF No. 14) at 17.  Plaintiff's claims, however, depend on its legal right to exclude the public from the common corners its Property shares with public land and, accordingly, public access to these common corners.  Plaintiff put public access to public land at issue in this case.  Whether the common corner is fundamentally a part of the

public lands or belongs exclusively to the adjacent private landowner is dispositive of the issues in this case. *See United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1508–09 (10th Cir. 1988), *cert. denied sub nom Lawrence v. United States*, 488 U.S. 980 ("All that [the private landowner] has lost is the right to exclude others . . . from the public domain—a right he never had."). Plaintiff's claims concerning ownership of and control over the common corners cannot be separated from the public lands or access to public lands when the common corners are part of the public lands.

Because Plaintiff's claims satisfy each element of *Grable* jurisdiction, this Court has federal question jurisdiction under 28 U.S.C. § 1331 such that removal to this Court was proper. Thus, this Court should deny Plaintiff's motion for remand.

### c. Plaintiff's Claims are Completely Preempted by Federal Law

Plaintiff's claims seek recognition and enforcement of its purported right to exclusive control over the common corners its Property shares with federally owned public lands. Because these common corners are the only access points to the public domain that is otherwise corner locked by Plaintiff's Property, federal laws that provide exclusive causes of action concerning the permissibility of private obstruction to free transit over or through the public lands completely preempt Plaintiff's claims.

The complete preemption doctrine provides that "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)). To determine whether a state law claim is completely preempted by federal law, this Court must first consider whether Congress intended to allow removal of the plaintiff's claims "as manifested by the

provision of a federal cause of action." *Dutcher v. Matheson*, 733 F.3d 980, 985–86 (10th Cir. 2013).

Congress expressed an intent to have claims about private control over access to public lands resolved in federal court by enacting the Unlawful Inclosures of Public Lands Act of 1885 (UIA), 43 U.S.C. §§ 1061 *et seq.*  Through these laws, Congress created exclusively federal causes of action to adjudicate private actors' legal rights to enclose, obstruct access to, or otherwise control public lands.  *See* 43 U.S.C. § 1062.  In fact, Congress expressly directed these actions be brought in federal court and conferred jurisdiction in the federal courts to adjudicate these actions. *See id.*

To this end, while Plaintiff avers that the only cause of action expressed by the UIA is the civil action brought by the United States Attorney for violations of 43 U.S.C. § 1061 such that no private cause of action for UIA violations exists, *see Motion for Remand* (ECF No. 14) at 10, this argument runs against the plain language of the UIA.  Section 1062 of the UIA does require the United States Attorney to initiate claims for violations of 43 U.S.C. § 1061, but it has no similar requirements for violations of 43 U.S.C. § 1063, which concerns a broad range of private conduct aimed at obstructing access to public lands.  Here, where Plaintiff claims the right to exclusive control over common corners and the right to exclude the public from the common corners, Plaintiff's claims arise directly under 43 U.S.C. § 1063 as they demand that Plaintiff has the authority to prevent free transit through the public lands.

Plaintiff alleges that it has exclusive ownership and control over the airspace at the common corners and that it may exclude others from "corner crossing" at the common corner.  *See* Complaint (ECF No. 2) at 4 (¶¶ 16-21), 6 (¶ 28).  In so doing, Plaintiff claims that the air above the common corner either is part of its exclusive property or, at least, Plaintiff has the right to

exclusive control over the use of the air above the common corner. *See id.* at 4 (¶ 18) ("Plaintiff has a right to exclusive control, use, and enjoyment of its Property, which includes the airspace at the corner, above the Property."), (¶ 19) ("Plaintiff owns and controls the airspace above it real property, and is entitled to exclude others from the use of that airspace by a 'corner crossing.'"). To this end, Plaintiff incorporates by reference into its Complaint a map that illustrates how several sections of public land adjacent to Plaintiff's Property are only accessible via corner crossing over common corners shared by Plaintiff's Property and the public lands. *See* Exhibit 1 to Complaint (ECF No. 2) at 15.

Despite its claims and their necessary effects (if successful), Plaintiff avers that Defendants, as members of the public, may enter and be on public lands. *See Memo for Remand* (ECF No. 14) at 11. Plaintiff does not *expressly* claim otherwise and attempts to disclaim the obvious effects it claims would have on public entry to the public domain. *See id.* However, Plaintiff cannot argue past its only allegations, the reality of "corner locking" on entry to the public lands, and the necessary result of its claims, if successful.

Plaintiff seeks an enforceable right to control use of and public entry into or over the common corners. *See* Complaint (ECF No. 2) at 6 (¶¶ 28-33), 8 (¶ 44). Accordingly, Plaintiff asks for total control over ingress and egress to the public lands beyond these common corners and, consequently, a right to enclose or obstruct access to "corner locked" public lands adjacent to Plaintiff's Property.

However it chooses to describe this action, Plaintiff expressly seeks judicial recognition of a right to control access to public lands adjacent to its Property. Congress assigned this exact kind of case to the federal courts through federal law. *See* 43 U.S.C. §§ 1061-1063. Thus, the congressional intent prong of the complete preemption analysis supports removal.

The ordinary preemption analysis is more straightforward.  Plaintiff's state law property rights must yield to federal laws controlling the use of public lands.  *United States v. Bd. of Cnty. Comm'rs of Otero*, 843 F.3d 1208, 1212 (10th Cir. 2016).

Congress's plenary power to control the use of public lands "necessarily override[s] and preempt[s] conflicting state laws, policies, and objectives under the Constitution's Supremacy Clause, U.S. CONST. art. VI, cl. 2."  *Wyoming v. United States*, 279 F.3d 1214, 1227 (10th Cir. 2002).  ""A different rule would place the public domain of the United States completely at the mercy of [the State]."  *Kleppe v. New Mexico*, 426 U.S. 529, 543 (1976) (quoting *Camfield v. United States*, 167 U.S. 518, 526 (1897)).

Plaintiff claims state law grants it property rights to control use of and access to the common corners its Property shares with federally owned public lands.  *See Memo for Remand* at 16-18.  Federal law provides that private actors may not, even temporarily or under certain conditions, obstruct free access to and transit through the public domain.  *See* 43 U.S.C. § 1063; *McKelvey*, 260 U.S. at 357; *Bergen*, 848 F.2d at 1508–09.  Because Plaintiff's state law claims require the existence of a private right to obstruct access to and transit through the public lands, these claims conflict with federal law and are preempted.

As to ordinary preemption between its state law claims and these federal laws, Plaintiff simply declares that "[t]he UIA does not preempt Wyoming law" and goes no further into the analysis.  *See Memo for Remand* (ECF No. 14) at 11.

Because both prongs of "complete preemption" are present here, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and removal was proper.  Thus, this Court should deny Plaintiff's motion for remand.

**d.  Alternatively, Federal Common Law Governs Questions of Airspace and Use of Airspace in this Case**

If the UIA does not cover whether Plaintiff may exert exclusive control or rights to the airspace above common corners in the Checkerboard in a way that excludes or obstructs the public from federally owned public lands, then federal common law concerning air and water in their ambient aspects governs such that Plaintiff's claims sound in federal law and may be removed.

In the absence of congressional action, "and when there exists a significant conflict between some federal policy or interest and the use of state law, the [Supreme] Court has found it necessary, in a few and restricted instances, to develop federal common law." *City of Milwaukee v. Illinois (Milwaukee II)*, 451 U.S. 304, 313 (1981) (cleaned up).  "[T]here is a federal common law concerning air and water in their ambient or interstate aspects." *Suncor Energy*, 25 F.4th at ___, 2022 U.S. App. LEXIS 3458, at *32 (quoting *Illinois v. City of Milwaukee (Milwaukee I)*, 406 U.S. 91, 93 (1972)).

Here, Plaintiff's claims expressly concern the ownership, use, and control of air shared by private and federally owned public lands.  *See* Complaint (ECF No. 2) at 4 (¶¶ 18-19).  Plaintiff seeks an order granting Plaintiff, as a private landowner, an exclusive right to control use of this airspace so that others may not enter or cross through this air to access federally owned public lands.  *See id.* at 4 (¶¶ 16-20).  Plaintiff may want to downplay the reality that its claims seek to limit or obstruct public access to public lands; yet, the necessary consequences flowing from Plaintiff's claims are clear—if Plaintiff succeeds on its claims, then state law would grant Plaintiff effective control over "corner locked" federally owned public lands adjacent to its Property.

In these ways, Plaintiff's claims present a substantial controversy between federal policies and interests aimed at ensuring public access to the public domain and the private use of state laws

to achieve a monopoly over federally owned public lands.  Thus, this Court should decide this matter by application of existing federal common law and the development of federal common law as a necessary expedient until Congress may address the issue squarely.  *See Milwaukee II*, 451 U.S. at 314.

### V.    DEFENDANTS' *PETITION FOR REMOVAL* CONTAINS SUFFICIENT ALLEGATIONS ABOUT THE UNDERLYING FACTS TO SHOW THE AMOUNT IN CONTROVERSY SUPPORTS DIVERSITY JURISDICTION

As to federal diversity jurisdiction, 28 U.S.C. § 1332(a), Plaintiff does not dispute, *see Motion for Remand* at 20-21, and Defendants have affirmatively shown that complete diversity exists among Plaintiff, through the domicile of its member, and the Defendants, residents of Missouri.  *See supra* at 2 (citing *First Supplement to Defendants' Petition for Removal* (ECF No. 11) at 2-3).  Instead, Plaintiff argues that Defendants have failed to allege sufficient underlying facts in support of the fact that the amount in controversy exceeds $75,000.  *See Motion for Remand* at 20-21.  Because the allegations in Plaintiff's Complaint and in Defendants' *Petition for Removal* include the underlying facts in support of the amount in controversy and because Defendants' burden is to show, by a preponderance of the evidence, that more than $75,000, is possibly "in play" in this case, Defendants have satisfied their jurisdictional burden to demonstrate federal diversity jurisdiction.

Federal diversity jurisdiction exists and allows for removal of an action from state court to federal court where the adverse parties are citizens of different states and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  In this case, Plaintiff is a citizen of North Carolina because of the domicile of its single member and Defendants are citizens of Missouri such that complete diversity exists to support this Court's federal diversity jurisdiction.  *See supra* at 2.

Further, where, as here, the complaint itself does not specify the amount of damages requested, a removing defendant must establish the amount in controversy by setting forth the underlying facts supporting the amount in controversy in the notice of removal itself. *See Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 Fed. Appx. 775, 777–78 (10th Cir. 2005) (quoting *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014)).  Still, when a defendant's notice of removal states in good faith the amount in controversy by setting out the underlying facts in support thereof, a plaintiff cannot manipulate the process to void an otherwise perfected removal by claiming its complaint has a lesser value after the notice of removal was filed.  *See Laughlin*, 50 F.3d at 873–74 (approving, in relevant part, *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366–68 (7th Cir. 1993)).

"The amount in controversy . . . is not 'the amount the plaintiff will recover,' but rather ***an 'estimate*** of the amount that will be put ***at issue*** in the course of the litigation.'" *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)) (emphasis added).  Defendants must "affirmatively establish jurisdiction by proving jurisdictional facts that make it possible an excess of $75,000 is in play." *Phelps Oil & Gas, LLC v. Noble Energy, Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021).  "In an action seeking declaratory and injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" *Id.*  (quoting *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)).  "Dismissal is appropriate only if it appears to a 'legal certainty' that the jurisdictional amount is not met." *City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983); *Miller v. Am. Royal Ass'n*, No. 14-CV-54-F, 2014 U.S. Dist.

LEXIS 109956, at *6 (D. Wyo. May 22, 2014) (citing *Atchison* rule in context of motion for remand).

In assessing whether the amount in controversy has been met in an action seeking declaratory and injunctive relief, federal courts in the Tenth Circuit apply the "either viewpoint" rule, which requires the reviewing court to consider "either the value of a judgment from the viewpoint of the plaintiff or the cost from the viewpoint of the defendant of injunctive and declaratory relief." *Id.* "In other words, we look to 'the pecuniary effect an adverse declaration will have on either party to the lawsuit.'" *Id.* (quoting *Atchison*, 699 F.2d at 509).

Plaintiff alleged that it owns certain real property in Carbon County, Wyoming, described in an attachment to its Complaint. *See* Exhibit 1 to Complaint (ECF No. 2) at 11-15. Plaintiff does not dispute, *see Motion for Remand* at 20-21, and Defendants have affirmatively shown in their *Petition for Removal* that this real property was encumbered by a $30,000,000.00 mortgage loan in 2017 and that certain premises, improvements, and acreage known as Elk Mountain Ranch located on this real property were sold for $19,500,000.00. *See Petition for Removal* (ECF No. 1) at 31 (¶¶ 159-161) and Exhibit C thereto. The mortgage loan documents provided are public records recorded with the Carbon County Clerk's office and sworn to and attested by Plaintiff, through its sole manager/member, Mr. Eshelman. *See* Exhibit C to *Petition for Removal* (ECF No. 1-3) at 21. This record is admissible as a party opponent statement, a public record, and/or a record or statement affecting an interest in property pursuant to F.R.E. 801(2) and 803(8), (14), and (15) and is self-authenticating pursuant to, at least, F.R.E. 902(1), (2), (8), and (13).

Plaintiff alleged that Defendants corner crossed and trespassed on Plaintiff's private lands over a five (5) day period in September 2021. *See id.* at 4 (¶ 16). Plaintiff alleged that Defendants may have corner crossed and trespassed on Plaintiff's private lands "on other dates." *Id.* Plaintiff

alleged that Defendants "may intend to encourage other persons to carry out unlawful 'corner crossings' upon Plaintiff's Property."  *See id.* at 9 (¶ 51).  Thus, Plaintiff alleges that Defendants may have committed trespasses on Plaintiff's private lands at different times, through different means, at different locations, and through other persons.  *See id.* at 4 (¶ 16), 9 (¶ 51).

Plaintiff alleged that it suffered damages as a result of Defendants' corner crossing in an amount exceeding $50,000.00.  *See id.* at 5 (¶ 22); *see also* Civil Cover Sheet (ECF No. 8-1) at 3 (noting the amount in controversy as "$50,000+").  Plaintiff further alleged that Defendants' corner crossing "clouds title" to Plaintiff's entire $19.5 to $30 million real property in Carbon County, Wyoming, which it identified in Exhibit 1 to its Complaint.  *See* Complaint (ECF No. 2) at 8 (¶ 48).  Plaintiff did not allege that this supposed clouded title pertains only to the two sections of Plaintiff's real property identified within Exhibit 1.  *See id.*

Still, Plaintiff argues in its request for remand that this Court should only concern itself with two sections of its entire Property for purposes of assessing the amount in controversy.  *See Memo for Remand* (ECF No. 14) at 20.  Plaintiff's effort to undermine Defendants' otherwise perfected removal by modifying its allegations and the value in controversy *post hoc* should be rejected outright.  *See Laughlin*, 50 F.3d at 873–74; *see also Frederick*, 683 F.3d at 1247 nn. 2-3 (noting that 28 U.S.C. § 1446(c)(2) requires consideration of a plaintiff's pleadings).  Nevertheless, while a defendant may not supplement, modify, or present additional jurisdictional allegations outside their initial pleading requesting removal, *see Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1291 n.4 (10th Cir. 2001), and Defendants maintain that the allegations in their *Petition for Removal* meet the burden required to establish an excess of $75,000 is possibly in play here, Defendants provide the following arguments to address Plaintiff's rejiggering of its allegations.

Plaintiff, through Exhibit 1 to its Complaint, represents that its real property in Carbon County, Wyoming, includes some forty-four (44) partial or whole sections in the Checkerboard. *See* Exhibit 1 to Complaint (ECF No. 2) at 13-14.  Twenty-six (26) of the forty-four (44) sections of the Checkerboard that appear to be owned by Plaintiff are "whole" sections, meaning Plaintiff owns the entire section, while the remaining eighteen (18) sections are "partial" sections where Plaintiff owns less than the entire section.  *See id.*  The "partial" sections are not identical; each "partial" section has its own unique metes and bounds.  *See id.*

Still, each whole section of land in the Checkerboard is an equally sized rectangular land mass of 640 acres.  *See Leo Sheep Co. v. United States*, 440 U.S. 668, 672–73 (1979); The Corner-Locked Report.  Plaintiff's real property in Carbon County, Wyoming, has an approximate total valuation of $30 million.  *See* Exhibit C to *Petition for Removal* (ECF No. 1-3) at 3-5; *see also Memo for Remand* (ECF No. 14) at 20-21.  Accordingly, if each of the forty-four total sections of Plaintiff's property has an equal value, then each section has a separate value of about $681,818.18. Considering that the partial sections should, in general, have a lesser value than the whole sections (depending on the improvements and premises situated on the partial sections), the valuation becomes more complex, but not impossible to approximate.

Assuming, conservatively, that each partial section has half the value of each whole section, then the value of the partial versus the whole sections may be expressed through the following simple equation:

| Conditions |
| --- |
| Let x = value of partial section |
| Let y = value of whole section |
| Let y = 2x |
| Let z = value of Plaintiff's real property in Carbon County, Wyoming, or $30,000,000 |

$$18x + 26y = z$$
$$18x + 26y = 30,000,000$$
$$18x + 26(2x) = 30,000,000$$
$$18x + 52x = 30,000,000$$
$$70x = 30,000,000$$
$$x = 428,571.429 \text{ or } x \approx 428,571.43$$

Therefore, if partial sections are valued at half the value of each whole section, then each partial section, x, has an approximate value of $428,571.43 while each whole section, y, has an approximate value of $857,142.86.

The two sections of its real property that Plaintiff now claims are the only sections "in play" in this action are whole sections with likely valuations between $681,818.18 and $857,142.86 per section. *See* Exhibit 1 to Complaint (ECF No. 2) at 14 (noting that Plaintiff owns "all" of the two sections "at issue"—Section 13 and Section 23). Accordingly, if Plaintiff's broad allegations about the effects of Defendants' conduct on the title to its "Property," *see* Complaint (ECF No. 2) at 8 (¶ 48), can appropriately be construed narrowly to mean Defendants' corner crossing clouded title to or otherwise damaged *only* these two whole sections, as Plaintiff suggests, then the value of Plaintiff's real property interests "at issue" in this case is between $1,363,636.36 and $1,714,285.72. This is not impermissible "economic analysis" introduced after a motion for remand has been filed; rather, this is simple math used to assist the Court with answering Plaintiff's charge to examine the value of a cloudy title on just two sections of Plaintiff's Property. *See Memo for Remand* (ECF No. 14) at 20.

Defendants have alleged sufficient facts and provided evidence in and through their *Petition for Removal* itself as to the underlying facts demonstrating that the amount in controversy exceeds $75,000. Plaintiff's argument that Defendants have baldly claimed the amount in controversy is met in this case without more is patently false. Further, even under Plaintiff's artificial, *post hoc* limiting of its own allegations about the Property affected in this case, Defendants' jurisdictional allegations and evidence demonstrate that much more than $75,000 is possibly in play here. Accordingly, this Court has federal diversity jurisdiction over this matter

under 28 U.S.C. § 1332(a) such that removal was proper and Plaintiff's request for remand should be denied.

### VI.    CONCLUSION

Plaintiff seeks a declaration, an injunction, and damages that would grant it exclusive control over the only access point to the public domain.  Plaintiff cannot claim the right to control access to the federal domain without necessarily raising federal issues of law concerning private efforts to control or obstruct access to the public lands.  This Court has federal question jurisdiction here and this matter should not be remanded.

Plaintiff is a limited liability company with one member who is domiciled in North Carolina.  Defendants are individuals residing in Missouri.  Plaintiff seeks declaratory and injunctive relief concerning real property assets worth tens of millions of dollars, as specifically alleged and demonstrated in Defendants' *Petition for Removal* itself.  Just two "whole" sections of Plaintiff's lands in the Checkerboard are worth over $1 million based on Defendants' prior jurisdictional allegations and proof.  Consequently, this Court should deny Plaintiff's request for remand because this Court has federal diversity jurisdiction over this case.  For each and every reason provided herein as well as those matters specifically alleged in Defendants' *Petition for Removal*, Defendants request that this Court deny Plaintiff's motion for remand.

Dated: April 28, 2022.                             THE FULLER LAW FIRM

By: */s/Ryan A. Semerad*
        Ryan A. Semerad, Esq.
        Wyoming State Bar No. 7-6270
        242 South Grant Street
        Casper, Wyoming 82601
        Telephone: 307-265-3455
        Facsimile: 307-265-2859
        Email: semerad@thefullerlawyers.com

        *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I certify that on the 28th day of April, 2022, I electronically filed the foregoing instrument with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Ryan A. Semerad*
An Employee of the Fuller Law Firm