UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 JUL 20  AM 11: 43

MARGARET BOTKINS, CLERK
CASPER

| | |
|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming,<br><br>Plaintiff,<br><br>v.<br><br>BRADLEY H. CAPE, ZACHARY M. SMITH, PHILLIP G. YEOMANS, and JOHN W. SLOWENSKY,<br><br>Defendants. | Case No. 22-CV-67-SWS |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 4) and supporting memorandum (Doc. 5). Plaintiff submitted an opposition thereto (Doc. 12), and Defendants replied (Doc. 15). Having considered the parties' arguments, reviewed the record herein, and being otherwise fully advised, the Court concludes unresolved questions of fact potentially affect, and therefore preclude, Defendants' request for dismissal.

### INTRODUCTION

Plaintiff owns certain real property in Carbon County, Wyoming. (Compl. ¶ 1.) Much of Plaintiff's private property borders public lands managed by the U.S. Department of Interior Bureau of Land Management (BLM) in a checkerboard pattern. (*Id.* p. 15.) This checkerboard pattern of land ownership causes public lands to meet diagonally at corners, and likewise for private lands, as roughly demonstrated here:

| PUBLIC | PRIVATE | PUBLIC | PRIVATE |
|---|---|---|---|
| PRIVATE | PUBLIC | PRIVATE | PUBLIC |

(*See* Compl. p. 2 ("In the checkerboard area, two sections of privately-owned real property lie diagonally adjacent to two sections of federal public land managed by the BLM.").)[1]

Plaintiff owns two diagonally-adjacent parcels of private land and alleges that in September 2021, Defendants crossed from public land to public land at the corner in order to hunt big game animals by using a "ladder-like device." (*Id.* ¶¶ 16-17.) Plaintiff contends Defendants' act of "corner crossing"[2] resulted in trespassing and infringing upon Plaintiff's airspace above the corners of its private land, even though Defendants are not alleged to have physically touched Plaintiff's private land. (*Id.* ¶¶ 16-21.)

## STANDARD FOR 12(b)(6) MOTION TO DISMISS

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6), alleging Plaintiff has failed to state a claim on which relief can be granted.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone

---

[1] For the history and reasoning behind the "checkerboard" pattern of landownership in the western United States, see Justice Rehnquist's discussion in *Leo Sheep Co. v. United States*, 440 U.S. 668, 669-77 (1979).
[2] "'Corner crossing' occurs when two pieces of public land diagonally share a corner with two pieces of private land, and a person crosses from one piece of public land, diagonally across the two parcels of private property, and onto an adjacent piece of public land. In order to carry out a 'corner crossing,' the person must physically travel across the privately-owned real property." (Compl. ¶ 16.) "Although there are no state or federal laws that address these 'corner crossings,' BLM does not consider them legal entries. Consequently, Montana, Wyoming, New Mexico, Colorado, Utah, and Idaho each have over 150,000 acres of public lands that the public cannot access." Hannah Solomon, *Wyoming's Data Trespass Laws Trample First Amendment Rights*, 18 Vt. J. Envtl. L. 346, 354 (2016).

is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To overcome a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As with all 12(b)(6) motions to dismiss, the Court accepts the nonmoving party's well-pled factual allegations as true but is not bound to accept an asserted legal conclusion as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiff alleges it "has a right to exclusive control, use, and enjoyment of its Property, which includes the airspace at the corner, above the Property" and is entitled to "exclude others from the use of that airspace by a 'corner crossing.'" (Compl. ¶¶ 18-19.) Plaintiff's property "is fenced and/or posted," and Plaintiff contends "Defendants' unauthorized entry upon and across the Property was willful, purposeful, knowing, and intentionally done, as the Property was fenced or posted, and 'No Trespassing' signs were posted in a plain and visible manner in the area in question." (*Id.* ¶¶ 13, 46.) Plaintiff seeks a judgment declaring Defendants' act of corner crossing constituted an illegal trespass and damages for civil trespass for the infringement of its property rights.

In their instant motion to dismiss, Defendants contend Plaintiff's causes of action fail to state a viable claim for relief because they are preempted by federal law. Defendants' argument largely relies on the Unlawful Inclosures Act of 1885 (UIA), 43

U.S.C. §§ 1061-1066. The UIA provides in relevant part:

> All inclosures of any public lands ... heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation ... are declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is forbidden and prohibited[.]
> ...
> No person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct ... any person from peaceably entering upon ... any tract of public land subject to ... entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands[.]

43 U.S.C. §§ 1061, 1063. Defendants argue Plaintiff's act of fencing and/or posting its property and attempt to prevent Defendants from corner crossing violate the UIA, thus precluding Plaintiff from prevailing on its declaratory judgment and trespass claims in this lawsuit.[3]

**1.     Defendants have standing to assert a violation of the UIA as a defense.**

Plaintiff contends Defendants lack standing to assert a violation of the UIA in their defense because the UIA does not provide a private cause of action. (Doc. 12 pp. 10-12 (citing *Crow Tribe of Indians v. Repsis*, 866 F. Supp. 520, 525 (D. Wyo. 1994)).) The Eighth Circuit addressed a set of circumstances similar to this case in 1914.[4] The case of *Mackay v. Uinta Development Co.*, 219 F. 116 (8th Cir. 1914), saw a private landowning

---

[3] Defendants have not asserted a counterclaim based on any alleged violation of the UIA.

[4] In 1929, the Eighth Circuit was divided into two circuits. The Eighth Circuit retained Minnesota, Iowa, North Dakota, South Dakota, Nebraska, Missouri, and Arkansas. The new Tenth Circuit took Wyoming Colorado, Utah, New Mexico, Kansas, and Oklahoma. Thus, Eighth Circuit decisions prior to the split in 1929 are, at a minimum, particularly persuasive to this Court, if not binding authority. *Compare Boynton v. Moffat Tunnel Improvement Dist.*, 57 F.2d 772, 781 (10th Cir. 1932) ("decisions cited from the Supreme Court of the United States, from the Eighth Circuit Court of Appeals, and from this court, are binding upon us") *with Estate of McMorris v. Comm'r*, 243 F.3d 1254, 1258 (10th Cir. 2001) ("we have never held that the decisions of our predecessor circuit are controlling in this court").

company sue an individual for trespass and damages for trailing his sheep over the company's Wyoming lands to reach public land. *Id.* at 117. The individual relied on the UIA in defense, and the company argued the UIA is not applicable "in an action between private litigants" not involving the United States. *Id.* at 120. The Eighth Circuit concluded otherwise, stating, "We think, however, that a private litigant cannot recover from another for an invasion of an alleged right founded upon his own violation of the [UIA]." *Id.* This Court finds *Mackay's* decision and reasoning persuasive. Thus, while Plaintiff is correct that the UIA does not provide for enforcement through a private right of action, Defendants here may assert a violation of the UIA as part of their defense against Plaintiff's complaint.

## 2. <u>Unresolved questions of fact preclude a conclusive ruling on Defendants' motion to dismiss.</u>

Turning now to whether Defendants' UIA defense can nullify Plaintiff's claims for relief, the Court finds any decision on the matter is currently precluded by existing questions of fact. Such questions include, but are not limited to, the physical placement, purpose, and extent of Plaintiff's fencing, "no trespassing" postings, and any associated warnings.

For example, the Court finds helpful guidance in the U.S. Supreme Court case of *Camfield v. United States*, 167 U.S. 518 (1897), which was an appeal from the Eighth Circuit case of *Camfield v. United States*, 66 F. 101 (8th Cir. 1895). There, the Government charged the appellants (defendants at the trial level) with violating the UIA by fencing in numerous sections of public land by only placing fence on their private property, "so as to completely inclose all of the government lands aforesaid, but without locating the fence on

any part of the public domain so included." *Camfield*, 167 U.S. at 519. The defendants/appellants admitted the fencing scheme but argued that if the UIA could be interpreted to apply to fencing sitting solely on private land, then it was an unconstitutional law. *Id.* at 520, 522. The Supreme Court determined, "Defendants are certainly within the letter of [the UIA]. They did inclose public lands of the United States to the amount of 20,000 acres, and there is nothing tending to show that they had any claim or color of title to the same[.]" *Id.* at 522. The Supreme Court noted that though a person may generally do as they please with their property, "[h]is right to erect what he pleases upon his own land will not justify him in maintaining a nuisance[.]" *Id.* The Supreme Court then found the UIA was constitutional and allowed the Government to abate the fence as a nuisance.

> So far as the fences were erected near the outside line of the odd-numbered sections, there can be no objection to them; but, so far as they were erected immediately outside the even-numbered sections, they are manifestly intended to inclose the government's lands, though in fact erected a few inches inside the defendants' line. Considering the obvious purposes of this structure, and the necessities of preventing the inclosure of public lands, we think the fence is clearly a nuisance, and that it is within the constitutional power of congress to order its abatement ....

*Id.* at 525. The Court further explained the difference between a fence that is intended to enclose one's land and a fence that is a nuisance intended to obstruct access to public lands.

> It is no answer to say that, if such odd-numbered sections were separately fenced in, which the owner would doubtless have the right to do, the result would be the same as in this case,—to practically exclude the government from the even-numbered sections,—since this was a contingency which the government was bound to contemplate in granting away the odd-numbered sections. So long as the individual proprietor confines his inclosure to his own land, the government has no right to complain, since he is entitled to the complete and exclusive enjoyment of it, regardless of any detriment to his neighbor; but when, under the guise of inclosing his own land, he builds a fence which is useless for that purpose, and can only have been intended to

> inclose the lands of the government, he is plainly within the statute, and is guilty of an unwarrantable appropriation of that which belongs to the public at large.

*Id.* at 527–28.

The *Camfield* opinion informs this Court that the physical placement and intention of Plaintiff's fence and/or postings may be a significant factor in determining Defendants' UIA arguments. *See also Mackay*, 219 F. at 120 ("It could have lawfully fenced its own without obstructing access to the public lands. That would have lessened the value of the entire tract as a great grazing pasture, but it cannot secure for itself that value, which includes as an element the exclusive use of the public lands, by warnings and actions in trespass."). Because that (and other potentially relevant) information is not currently available in the record, the Court cannot pass judgment on Defendants' request for dismissal based on the UIA.

3. **Plaintiff has otherwise stated a plausible claim on which relief can be granted.**

Plaintiff's causes of action are grounded in its claim that it has a right to control and exclude others from the airspace immediately above its privately-owned land. The law recognizes such a right, at least to an extent.

> The owner of land in fee holds all of the complex elements of a single right, which include not only the right to use the surface, but so much of the superjacent airspace as he or she can use, as well as the subjacent reaches below. A landowner's property interest in land extends to the airspace directly over the property, to the extent that the airspace can be used to benefit the underlying land. A property owner, therefore, owns only so much of the air space as such owner can practicably use.

8A Am. Jur. 2d Aviation § 2 (footnotes omitted); *see also United States v. Causby*, 328 U.S. 256, 264-65 (1946) ("if the landowner is to have full enjoyment of the land, he must

have exclusive control of the immediate reaches of the enveloping atmosphere;" a landowner "owns at least as much of the space above the ground as he can occupy or use in connection with the land;" invasions of the low-altitude superadjacent airspace immediately above one's land "are in the same category as invasions of the surface"). With the allegations that Defendants trespassed through Plaintiff's airspace when corner crossing, Plaintiff has stated a plausible claim for relief that survives Defendants' 12(b)(6) challenge.

## CONCLUSION AND ORDER

The Unlawful Inclosures Act does not provide a private cause of action, but Defendants may rely on it in defending against Plaintiff's claims. The Court cannot determine at this time whether the UIA precludes Plaintiff's claims as a matter of law because several pertinent questions of fact potentially affecting the UIA's application to this case remain outside the record. Putting the UIA aside for the moment, Plaintiff has stated plausible causes of action for civil trespass and declaratory judgment. Accordingly, the Court will deny Defendants' pending motion to dismiss and refer this case to the magistrate judge for an initial pretrial conference so the parties can engage in discovery.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 4) is hereby **DENIED**. This matter shall be referred to the magistrate judge for an initial pretrial conference under Fed. R. Civ. P. 16.

**ORDERED**: July 20th, 2022.

Scott W. Skavdahl
United States District Judge