M. Gregory Weisz, Wyo. Bar No. 6-2934
Crystal D. Stewart, Wyo. Bar No. 7-6057
PENCE AND MACMILLAN LLC
P.O. Box 765
Cheyenne, WY 82003
(307) 638-0386
(307) 634-0336 fax
gweisz@penceandmac.com
cstewart@penceandmac.com
Plaintiff's Attorneys

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | | |
|---|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-CV-00067-SWS |
| | ) | |
| BRADLY H. CAPE, an individual, ZACHARY M. SMITH, an individual, PHILLIP G. YEOMANS, an individual, and JOHN W. SLOWENSKY, an individual, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO: DEFENDANTS' MOTION TO EXCLUDE THE OPINION TESTIMONY OF PLAINTIFF'S DESIGNATED EXPERT WITNESS JAMES H. RINEHART

---

COMES NOW Plaintiff, Iron Bar Holdings, LLC, by and through its attorneys, M. Gregory Weisz and Crystal D. Stewart of Pence and MacMillan LLC, and hereby submits this response in opposition to *Defendants' Motion to Exclude the Opinion Testimony of Plaintiff's Designated Expert Witness James H. Rinehart* (the "Motion") as follows:

### I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 26(a)(2), Plaintiff timely offered the expert report of James H. Rinehart. He is a real estate broker with more than thirty years of professional experience, who has listed, marketed, sold, and closed over 150 rural and ranch properties in Wyoming and the western

United States. *See* Affidavit & Report of James H. Rinehart ("*Rinehart Report*") (ECF No. 48), ¶¶ 7, 23. He is a licensed real estate broker in Wyoming and Colorado with experience in selling ranch properties with/without, interspersed public land. Id. at ¶¶ 4-5, 23.

Through his decades of experience, Mr. Rinehart is both familiar with and knowledgeable about the impacts corner crossing can have on the marketing and sale of ranch property in Wyoming. Id. at ¶¶ 24-26. In fact, in 2005 Mr. Rinehart assisted Plaintiff with the purchase of Elk Mountain Ranch, the property at issue. Id. at ¶ 16. Since that time, Mr. Rinehart continued associating with Plaintiff to provide input on range management, conservation easements, and exchange issues affecting that very property. Id. at ¶ 18. Moreover, Mr. Rinehart is knowledgeable about the "corner crossing" issue that is the focus of this case. Id. at ¶ 20.

He offers an opinion on one subject well-within his expertise: the impact of corner crossing on Plaintiff's Elk Mountain Ranch. He is more than qualified to opine on this issue, both as a material witness and expert witness. His opinion is relevant to, and is probative, as to disputed issues in this case. Using his experience, Mr. Rinehart provided analysis and opinion concerning the impact corner crossing has on the marketability and value of the Elk Mountain Ranch.

Defendants' Motion, citing Fed. R. Evid. 702, seeks to exclude Mr. Rinehart's testimony because, Defendants argue his "report provides little discussion of the factual basis or data which he used to develop his opinions or the methodology employed to produce his conclusion of the specific diminution in value that would result." *See* Motion, p. 2.

Contrary to this assertion, Mr. Rinehart described: (i) the factors he considered (i.e., his methodology), (ii) how those factors affect ranches, and (iii) his opinion that corner crossing affects ranch values. These methods – which are not "scientific" so as to strictly fall within the purview of Daubert (citation below) – are nonetheless procedurally sound and materially relevant.

Moreover, this opinion will inform and assist the fact finder in assessing Plaintiff's legal claims and damages. Mr. Rinehart provides legally-sufficient information and described the factors he accounted for in formulating his opinions. The Court should deny the Motion.

## II.   LEGAL STANDARD

Rule of Evidence 702 allows an expert to testify if their "specialized knowledge will help the trier of fact … to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The "overarching subject" of the rule is the "evidentiary relevance and reliability—of the principles that underlie a proposed submission." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 2797 (1993).

Notably, Rule 702 is a flexible standard that "grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case." Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1179 (1999). The court's broad discretion applies both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability. United States v. Velarde, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

"A key, but sometimes forgotten principle of Rule 702 and Daubert is that Rule 702, both before and after Daubert, was intended to **relax** traditional barriers to admission of expert opinion testimony." Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (emphasis supplied) (citing Daubert). Accordingly, Rule 702 mandates a liberal standard for the admissibility of expert testimony. Daubert, 113 S. Ct. at 2794 (Rule 702 is part of "liberal thrust" of Federal Rules of Evidence, citing Beech Aircraft Corp. v. Rainey, 109 S. Ct. 439, 450 (1988)); *see also* 4

J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 702.02[1] (2nd ed. 2005) (collecting cases). As the Advisory Committee to the 2000 amendments of Rule 702 noted with approval "[a] review of the caselaw after <u>Daubert</u> shows that the rejection of expert testimony is the exception rather than the rule." <u>Cook</u>, *supra* 580 F. Supp. 2d at 1083.

## III.    ARGUMENT

The Court should deny the Motion.  Defendants ignore Mr. Rinehart's in-depth familiarity with the Elk Mountain Ranch property and his extensive professional experience that he relied upon.  This experience is precisely what Rule 702 contemplates.  An expert's "knowledge derived from previous professional experience falls squarely within the scope of Rule 702 ..." <u>James River Ins. Co. v. Rapid Funding, LLC</u>, 658 F.3d 1207, 1215 (10th Cir. 2011) (citing <u>United States v. Smith</u>, 640 F.3d 358, 365 (D.C. Cir. 2011) (other citations omitted).

Defendants mischaracterize *Rinehart's Report*, stating in conclusory fashion that he failed to apply his experience in forming his opinions.  However, as explained below, Mr. Rinehart provided thoughtful analysis and specifically stated that his conclusions are of a type he commonly relies upon as a licensed real estate broker.  Thus, in reality, Defendants' criticism of the *Rinehart Report* goes to its weight and credibility, and not its admissibility.

### A.    *Mr. Rinehart's Opinions Are Relevant To Plaintiff's Claims*

Rule 702 requires that proffered expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a). In <u>Daubert</u>, the Supreme Court stated this requirement goes primarily to relevance, because "expert testimony that does not relate to any issue in the case is not relevant and, ergo, non-helpful." 113 S. Ct. at 2795. Consistent with this authority, the Tenth Circuit set the standard under Rule 702 by referencing Fed. R. Evid. 401, which defines relevant evidence as "'evidence having *any tendency* to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" <u>Bitler v. A.O. Smith Corp.</u>, 400 F.3d 1227, 1234 (10th Cir. 2005) (emphasis added) (quoting Fed. R. Evid. 401).  Thus, "[d]oubts about whether an expert's testimony will be useful 'should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations.'" <u>Robinson v. Mo. Pac. R.R. Co.</u>, 16 F.3d 1083, 1090 (10th Cir. 1994) (citing J. Weinstein & M. Berger, <u>Weinstein's Evidence</u>, § 702.02 (1988)).

Defendants assert Mr. Rinehart's opinion about the impact of corner crossing on rural property valuations is somehow irrelevant.  Defendants ignore the reality that a landowner is entitled to claim damages in a civil trespass case.  Mister Rinehart's opinion as to a potential listing price relates to damages: it was specifically rendered as to the damaging effect of corner crossing on Plaintiff's real property. *Rinehart Report*, ¶¶ 29, 36.  His long personal experience on the ranch establishes that not only does he have the relevant factual background with *this very ranch property*, but also that his decades of experience as a real estate broker allow him to assess the impact of corner crossing.  Thus, his opinions are relevant to Plaintiff's civil trespass claim, and in particular, the damages portion of that claim.[1] Plaintiff also alleged its belief that Defendants "may intend to encourage other persons to carry out unlawful 'corner crossing' upon Plaintiff's property." *Complaint*, ¶ 51.

Consequently, the jury must consider the damaging impact of corner crossing. Mister Rinehart's opinions speak *directly* to this point and provide relevant information that will assist the fact finder in making such a determination.

---

[1] Plaintiff specifically alleged it was damaged by Defendants' corner crossing and trespass. *Complaint*, ¶¶ 22, 36-37, 48-52, and prayer for relief ¶ D.

In addition, Defendants themselves have asserted a defense that the Plaintiff's actions in attempting to control access over its real property somehow constituted a violation of the Unlawful Inclosures of Public Lands Act, 43 U.S.C. §§ 1061 to 1066 ("UIA").   Accordingly, Defendants will be obligated to prove that Plaintiff used force, threats, intimidation, or fencing so as to prevent or obstruct the Defendants from peaceably entering public lands. *See, e.g.,* 43 U.S.C. § 1063.  Thus, Plaintiff's motivations for attempting to control trespass on, across, or upon the Elk Mountain Ranch is directly relevant to the UIA issue.  If corner crossing could result in Plaintiff having to reduce the listing price if Plaintiff should ever determine to sell the ranch, this alone demonstrates the relevance of the *Rinehart Report* and the propriety of Plaintiff's motivations.[2]

B. <u>*Mr. Rinehart's Opinions Sufficiently Meet Rule 702's Reliability Requirements*</u>

Unlike an ordinary witness testifying under Fed. R. Evid. 701, "an expert is permitted wide latitude to offer opinions . . . ." <u>Daubert,</u> 113 S. Ct. at 2796 (citing Fed. R. Evid. 702 and 703).  Thus, admission of expert testimony "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." <u>Id</u>.  A "reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community." <u>United States v. Downing</u>, 753 F.2d 1224, 1238 (3rd Cir. 1985).

As detailed above, Mr. Rinehart's opinion is relevant to issues in the instant litigation and he possesses the requisite qualifications to provide an opinion about the marketability of, and effect of corner crossing on, Plaintiff's property.   Indeed, given his decades of experience on the Elk

---

[2] Testimony at trial will show that the principal of Iron Bar Holdings, LLC has sold other ranches in the immediate vicinity of the Elk Mountain Ranch.  Testimony will also show that Plaintiff considered the corner crossing issue in its purchase and management of the ranch.

Mountain Ranch it cannot be disputed that his knowledge is first-hand, actual, and observed. Unlike many experts, Mr. Rinehart's status as a material witness bolsters his professional opinions.

      a.  <u>Mr. Rinehart Identifies An Adequate Factual Basis For His Opinion</u>

The *Rinehart Report* identifies the basis for Mr. Rinehart's analyses and opinions.  He explained both his personal and professional familiarity with the checkerboard pattern of land ownership generally, as well as his understanding of the "corner crossing" issue that is the focus of this case. *Rinehart Report*, ¶¶ 14, 20.  He goes on to describe his familiarity with issues caused by the checkerboard pattern of land ownership as it relates to ranch and rural property transactions. <u>Id</u>. at ¶ 15.  Next, the report sets forth the underlying facts establishing Mr. Rinehart's familiarity with the Elk Mountain Ranch, Plaintiff's purchase of that property, and Mr. Rinehart's subsequent work relating to property management issues on the ranch. <u>Id</u>. at ¶¶ 16, 18.  Finally, he further details the factors he considered in rendering his opinion, including his experience in marketing and selling ranch properties, his knowledge of corner crossing/trespassing issues related to ranch properties, and particular factors he considers when determining the listing price of a ranch property. <u>Id</u>. at ¶¶ 14-15, 21-26, 30-33.

Mister Rinehart did in fact describe his methodology, and noted how his work in making decisions related to listing, marketing, and sale of ranches is based on consideration of various factors affecting a particular ranch such as impacts of: (i) hunting/fishing/recreational uses, (ii) roads, (iii) easements, (iv) fences, (v) neighboring private lands, (vi) neighboring public lands, (vii) boundary issues, (viii) trespass issues, (ix) land ownership patterns, (x) subdivision issues, and (xi) issues with patrolling land boundaries. *Rinehart Report* ¶¶ 30-32.

Additionally, he specifically noted that all of the opinions and conclusions he offers are of the type that he commonly relies upon as a licensed real estate broker. *Rinehart Report* p. 5.  Finally, he also described his personal and professional background and how that pertained to his opinions:

- He noted he was asked to offer his opinion about the impact of corner crossing on the listing, marketing, sale, and closing of real estate transactions. ¶ 29

- He described his personal experience with the checkerboard, having grown up in southeastern Wyoming. ¶ 14.

- He described his personal knowledge that checkerboard land ownership is an issue in many ranch real estate transactions. ¶ 15.

- He even experienced corner crossing issues outside of the checkerboard. ¶¶ 21-22.

- He offered a specific observation – that ranches not affected by checkerboard land ownership have higher value than those with corner crossing, and that both buyers and sellers take this issue into account when making offers. ¶¶ 24-25.

- He noted a particular problem that checkerboard ownership causes: the increased need for patrol of land borders. ¶ 25.

- He noted his opinions were also based on discussions with other licensed real estate brokers and with landowners. ¶ 33.

- He specifically described how he has dealt with hunting, fishing, and wildlife issues and the impact of trespassing on properties. ¶ 32.

- He concluded his report by noting that as a licensed real estate broker, he would advise that any listing to sell the Elk Mountain Ranch should be reduced at least thirty-percent (30%) if corner crossing is allowed on the ranch. ¶¶ 34-37.

b.  Mr. Rinehart Employed A Reliable Methodology

As an experienced real estate broker, Mr. Rinehart employed a methodology generally accepted within his industry when deciding how to market a ranch property, at what price to list the property, and what factors may negatively affect pricing. Id. at ¶ 30.  In fact, the methodology he employed in reaching his opinion is somewhat akin to methods used in making a broker's price opinion. See Wyo. Stat. Ann. § 33-28-102(b)(lxii) (a "broker's price opinion" includes providing "a varying level of detail about the real estate's condition, market, and neighborhood . . . ." among other factors). This methodology has been used for many years in real estate and is accurate and reliable. See https://nabpop.org/bpo-accuracy/#1.  Moreover, the factors Mr. Rinehart considered comport with factors that other ranch real estate brokerages consider in listing price determination, such as "access," "recreation," "adjacency to public lands," and "end-of-the-road privacy." See, e.g. https://www.mirrranchgroup.com/top-7-factors-affecting-ranchland-prices.

While making a property listing determination is better described as an art, rather than a science, there are numerous factors a broker can consider. However, each property is different and assessed according to the particularities of that piece of property as well as factors material to that transaction. See Wyo. Stat. Ann. § 33-28-102(b)(xxxii) ("'Material to the transaction' means [information] having importance, relevance or consequence to a person making a decision regarding the purchase, sale or lease of real estate."). Rinehart's Report specifically identified various factors that were important to forming his opinions, and decisions of buyers and sellers.

c.  Mr. Rinehart Reliably Applied His Methodology

Mr. Rinehart applied his experience and generally accepted methods within his field to the facts of this case, and in particular, to the underlying facts and nuances as they relate to the marketability of the Elk Mountain Ranch. Rinehart Report, ¶ 36. In reaching his opinions, Mr.

Rinehart described and then gave due consideration to issues that could affect the value of Elk Mountain Ranch if it were to be listed for sale. *Rinehart Report*, ¶¶ 30-36.  He considered the effects of permissible versus prohibited corner crossing and then assessed how permissible corner crossing would negatively affect Plaintiff's ability to list Elk Mountain Ranch for sale.

## IV.    CONCLUSION

Defendants' Motion does not relate to the admissibility of Mr. Rinehart's testimony. Rather, the Motion relates to the weight of his report and testimony. As noted above, a real estate broker's analysis and advice as to the listing, marketing, sale, and closing – and the appropriate listing price – are admittedly subjective in result, and more of an art than science.  However, so long as a broker describes the factors that he/she considered in rendering advice (*i.e.*, the information "material to the transaction" under Wyo. Stat. Ann. § 33-28-102(b)(xxxii)) then the opinion expressly comports with Wyoming law and cannot be deemed insufficient.

Obviously, Defendants are entitled to challenge Mr. Rinehart's opinions by cross-examination and/or by designation of another expert witness that might have different opinions. Defendants, are not however, entitled to ask that the Court prohibit Mr. Rinehart from testifying.

RESPECTFULLY SUBMITTED on this 24th day of January, 2023.

   */s/ M. Gregory Weisz*
M. Gregory Weisz, Wyo. Bar No. 6-2934
Crystal D. Stewart, Wyo. Bar No. 7-6057
PENCE AND MACMILLAN LLC
5908 Yellowstone Road
P.O. Box 765
Cheyenne, WY 82003
(307) 638-0386 (telephone)
(307) 634-0336 (fax)
gweisz@penceandmac.com
cstewart@penceandmac.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2023, a true and correct copy the above and foregoing document was served by CM/ECF upon the following:

Ryan A. Semerad, Wyo. Bar No. 7-6270
The Fuller & Semerad Law Firm
242 South Grant Street
Casper, WY 82601
*Defendants' Attorney*

Lee Mickus
Evans Fears & Schuttert LLP
3900 E. Mexico Avenue, Suite 1300
Denver, CO 80210
*Defendants' Attorney*

Patrick J. Lewallen
Trevor J. Schenk
Chapman Valdez & Lansing
P.O. Box 2710
Casper, WY 82602
*Attorneys for Backcountry Hunters*

Eric B. Hanson
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
*Attorneys for Backcountry Hunters*

Karen Budd-Falen, Wyo. Bar No. 5-2647
Rachael L. Buzanowski, Wyo. Bar No. 8-6693
Budd-Falen Law Offices, LLC
P.O. Box 346
Cheyenne, WY 82003-0346
*Attorneys for Wyoming Stockgrowers Assoc. and Wyoming Wool Growers Assoc.*

*/s/ M. Gregory Weisz*
Pence and MacMillan LLC