Iron Bar Holdings v. Bradly H. Cape, et al.        Case No. 22-CV-00067-SWS

1

1               UNITED STATES DISTRICT COURT

2                   DISTRICT OF WYOMING
     ----------------------------------------------------------
3
     IRON BAR HOLDINGS, LLC, a
4    North Carolina limited
     liability company registered
5    to do business in Wyoming,

6            Plaintiff,

7       vs.                        Case No. 22-CV-00067-SWS

8    BRADLY H. CAPE, an individual,
     ZACHARY M. SMITH, an individual,
9    PHILLIP G. YEOMANS, an individual,
     and JOHN W. SLOWENSKY, an individual,

10
             Defendants.
11   ----------------------------------------------------------

12

13         VIDEOTAPED DEPOSITION OF BRADLY H. CAPE
                   Taken by the Plaintiff
14
                   7:55 a.m., Thursday
15                   March 30, 2023

16

17          PURSUANT TO NOTICE, the videotaped deposition of

18   BRADLY H. CAPE was taken in accordance with the applicable

19   Federal Rules of Civil Procedure at the Wyoming State Bar,

20   4124 Laramie Street, Cheyenne, Wyoming, before Eric D.

21   Nordberg, a Registered Professional Reporter and a Notary

22   Public for the State of Wyoming.

23

24

25

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

2

```
 1              A P P E A R A N C E S

 2   For the Plaintiff:      MR. M. GREGORY WEISZ
                             Attorney at Law
 3                           PENCE AND MACMILLAN LLC
                             5908 Yellowstone Road
 4                           P.O. Box 765
                             Cheyenne, WY 82003
 5
     For the Defendants:     MR. RYAN A. SEMERAD
 6                           Attorney at Law
                             THE FULLER & SEMERAD LAW FIRM
 7                           242 South Grant Street
                             Casper, WY 82601
 8
                             MS. ALEXANDRIA LAYTON
 9                           Attorney at Law
                             EVANS FEARS & SCHUTTERT LLP
10                           3900 East Mexico Avenue, Suite 1300
                             Denver, CO 80210
11
     Videographer:           MR. HOUSTON WOODHOUSE
12
     Also present:           MR. ZACHARY SMITH
13                           MR. PHILLIP YEOMANS
                             MR. JOHN SLOWENSKY
14                           MS. CARRIE SELFRIDGE

15

16

17                  I N D E X
                                              Page
18
     DEPOSITION OF BRADLY H. CAPE:
19
     Direct by Mr. Weisz                        5
20   Cross by Mr. Semerad                      94
     Redirect by Mr. Weisz                    111
21

22

23

24

25
```

Iron Bar Holdings v. Bradly H. Cape, et al.                     Case No. 22-CV-00067-SWS

                                                                                3

1                          E X H I B I T S
           No.                   Description                       Identified
2
           1      Map                                                 4
3
           2      Wyoming big game brochure excerpts                 17
4
           3      Wyoming Game and Fish Memorandum                   25
5                 dated August 25, 2004, Subject:
                  A.G. Opinion — "Corner-Crossing"
6
           4      Document headed "Hunting Access in                 26
7                 Wyoming"

8          5      Department of the Interior Office                  28
                  of the Solicitor Memorandum dated
9                 Nov. 5, 1997, Subject: Opinion
                  re the Unlawful Enclosures of
10                Public Lands Act

11         6      Wyoming Public Land Access Guide                   29

12         7      Photograph                                         44

13         8      Photograph                                         51

14         9      Photograph                                         51

15         10     Photograph                                         51

16         11     Photograph                                         51

17         12     Photograph                                         51

18         13     Photograph                                         51

19         14     Photograph                                         51

20         15     Photograph                                         77

21         16     Plaintiff's First Supplemental                    110
                  Disclosures
22
           17     Caller ID photographs                             113
23

24

25

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

4

1                    P R O C E E D I N G S

2                         (Deposition proceedings commenced

3                         7:55 a.m., March 30, 2023.)

4                         (Deposition Exhibit No. 1

5                         marked for identification.)

6              THE VIDEOGRAPHER:  All right.  Good

7     morning.  We are on the record.  The time is 7:55 a.m.,

8     March 30, 2023.  We are here today for the videotaped

9     deposition of Bradly H. Cape.  The case is being held in

10    the United States District Court, District of Wyoming,

11    captioned Iron Bar Holdings, LLC v. Bradly Cape, et al.,

12    Case Number 22-CV-00067-SWS, and today we are located at

13    4124 Laramie Street, Cheyenne, Wyoming, 82001.  The court

14    reporter today, Eric Nordberg.  Legal videographer, Houston

15    Woodhouse.  Starting with the plaintiff's counsel, please

16    state your appearances.

17             MR. WEISZ:  Good morning.  For the

18    plaintiff, Iron Bar Holdings, my name is Greg Weisz of

19    Pence and MacMillan, LLC.  With me, I have our legal

20    assistant, Carrie Selfridge.

21             MR. SEMERAD:  Good morning.  Ryan Semerad

22    on behalf of all the defendants.  With my is Alexandria

23    Layton, also counsel for the defendants.

24                         (Witness sworn.)

25

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

5

1                          BRADLY H. CAPE,

2      called for examination by the Plaintiff, being first duly

3      sworn, on his oath testified as follows:

4                          DIRECT EXAMINATION

5         Q.    (BY MR. WEISZ)  Good morning, Mr. Cape.

6         A.    Good morning.

7         Q.    Please state your full name for the record.

8         A.    Bradly Cape, Bradly Harold Cape.

9         Q.    Thank you.  Mr. Cape, have you ever been deposed

10     before?

11        A.    I have.

12        Q.    You have.  I don't want to go into a bunch of

13     detail, but briefly, tell me about that prior deposition.

14     What kind of case was it?

15        A.    It was work related that I -- people I worked for

16     was suing me.

17        Q.    Okay.  All right.  And so there was a deposition

18     in that case.  Any other depositions?

19        A.    No.

20        Q.    Okay.  All right.  Well, so I'm going to try to

21     skip through this quickly.  If you've been deposed before,

22     you probably understand the ground rules.  I'll just tell

23     you, you know, kind of my process, a couple things for you

24     to keep in mind.  First of all, if I ask you a question and

25     you answer, I will assume that you understood my question.

31

1    A.    Phil and Zach.

2    Q.    Okay.  John wasn't there.

3    A.    Correct.

4    Q.    Okay.  Where did you hunt?  What lands did you

5    hunt?  And I direct your attention to Exhibit 1.

6    A.    Section numbers?  How do you want me to describe

7    that?

8    Q.    Yeah, section numbers would be helpful.

9    A.    Section 14.

10   Q.    Okay.

11   A.    Section 24, Section 30, Section 36.  And I

12   believe that is Section 26.  It's hard to read.

13   Q.    The one that says -- it has three

14   landownerships --

15   A.    Correct.

16   Q.    -- State of Wyoming?

17   A.    Correct.  Is that 26?

18   Q.    I believe it is 26.  Incidentally, Mr. Cape,

19   please try not to talk over me.

20   A.    Sorry.

21   Q.    It makes Eric's job harder.

22   A.    Sorry, Eric.

23   Q.    14, 24, 30, 36 and 26.  That was in 2020, right?

24   A.    Yes.

25   Q.    Did you hunt on the land in Section 26 owned by

1    point?  Was it a six-point?  What was it?

2        A.    It was a five-point.

3        Q.    Okay.  What about Zach and Phil in 2020?

4        A.    Theirs were six-points.

5        Q.    Okay.  How did you get the elk off the mountain

6    in 2020, your elk?

7        A.    We butchered it and took it out on backpack.

8        Q.    Okay.  All right.  So let's talk -- and is the

9    same true for Zach and Phil --

10       A.    Yes.

11       Q.    -- in 2020?

12       A.    Yes.

13       Q.    Okay.  All right.  Let's talk about the corner

14   crossing issue.  In 2020, where did you camp?

15       A.    Section 14.

16       Q.    All right.  How did you get to Section 26 that

17   year?

18       A.    Walked.

19       Q.    Okay.  Describe for me where you walked.

20       A.    Walked across the corner from 14 to 24 and 24 to

21   26.

22       Q.    Okay.  At the intersection of Sections 14 and 24,

23   managed by the BLM, and Sections 13 and 23, which I will

24   tell you are owned by Iron Bar Holdings, how did you locate

25   that corner?

Iron Bar Holdings v. Bradly H. Cape, et al.          Case No. 22-CV-00067-SWS

43

1    A.    I can see it visually.  I seen it.

2    Q.    Okay.  Can you see it from the county road?

3    A.    Yes.

4    Q.    How can you see it from the county road?

5    A.    It's got two big signs sticking up there you can

6    see.

7    Q.    Okay.  Do you know whether or not there is a

8    brass cap at that section?

9    A.    There is a U.S. Geological Survey marker there.

10    Q.    Okay.  And when I say brass cap, I'm talking

11    about a USGS marker and it's about the size of a soda can.

12    You agree with me?

13    A.    Yes.

14    Q.    And it depicts a certain geographic area, right?

15    A.    Yes.

16    Q.    Does the brass cap at this area show the

17    locations of Sections 13, 14, 23 and 24?

18    A.    Yes.

19    Q.    Okay.  And you talked about some signs.  I think

20    you said signs.  You agree where me that at that area,

21    there are two "No Trespassing" signs, correct?

22    A.    Yes.

23    Q.    And they are on -- mounted on steel T posts,

24    right?

25    A.    Yes.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

45

1     A.     T posts, chain, wire tying the two T posts

2  together, a lock.

3     Q.     Okay.  And these signs are visible from the

4  county road?

5     A.     Yes.

6     Q.     So those signs actually make it pretty easy to

7  locate that corner, correct?

8     A.     Yes.

9     Q.     When did you first go to that corner?

10    A.     When I went hunting in 2020.

11    Q.     Okay.  Other than seeing those signs, did you use

12 any device to help you locate that section corner, the onX

13 app?

14    A.     No.

15    Q.     Okay.  You didn't need to use onX.

16    A.     Correct.

17    Q.     It was obvious, right?

18    A.     Correct.

19    Q.     Okay.  All right.  I believe you testified that

20 in 2020, you cross from Section 14 into Section 24, right?

21    A.     Yes.

22    Q.     And if, in fact, if we were able to look at the

23 top of that brass cap, those two sections would be -- would

24 be marked, correct, on the brass cap?

25    A.     The 14 and 24, yes.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

46

1     Q.    Yeah.  And you agree with me if you were to look

2  at the top of the brass cap from above, it's almost like

3  looking through a rifle scope.  Each of the sections are

4  numbered, right?

5     A.    I don't recall if they're numbered.

6     Q.    Okay.

7     A.    And I have -- I can't remember if they're

8  numbered.

9     Q.    Without knowing the numbers, how did you know

10  whether you were on public land or private land?

11     A.    The "No Trespassing" signs mark the private land,

12  tell me where not to go.

13     Q.    Okay.  To your knowledge, are those two signs

14  located on real property, land, owned by Iron Bar Holdings?

15     A.    Yes.

16     Q.    Okay.  All right.  How did you get across in

17  2020?  How did you cross those, the corner?

18     A.    We stepped around it.

19     Q.    Okay.  Physically, how did you step around it,

20  the corner?  Did you step through, between the signs or --

21     A.    I can't step between the signs because of the

22  chain and the lock.

23     Q.    Okay.

24     A.    So I put my -- probably done it different each

25  time, but plant my left foot on the public land, grab the

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

47

1    T post, swing my right foot around and hit the public land

2    on the other side.

3        Q.    Okay.  So in 2020, you grabbed the T post and

4    swung yourself around.

5        A.    Yes.

6        Q.    Okay.  Did you put your foot on what you believe

7    to be private property?

8        A.    No.

9        Q.    Okay.  In 2020, did Zach and Phil cross that

10   corner in the same manner?

11       A.    Yes.

12       Q.    Grabbed the T post and swung themselves around.

13       A.    I wouldn't know.

14       Q.    Well, okay.  Help me understand.

15       A.    I know how I did it.

16       Q.    Okay.  So when I asked you that, initially, you

17   said yes, and now you're changing your answer that you're

18   not sure.  Is that what you're saying?

19       A.    They crossed the same corner I did.

20       Q.    Okay.

21       A.    Whether they physically had to grab a T post and

22   swing the way I did, I don't know.

23       Q.    Okay.  Did you see them?

24       A.    That's what I did.

25       Q.    That's what you did.  Okay.

54

1        Q.    Okay.  All right.  Let's continue.  Do you --

2    let's just start with Exhibit 8.  Do you know where that

3    brass cap is located?

4        A.    Exhibit 8 is from Section 30 to Section 36.

5        Q.    Okay.  From BLM land to State of Wyoming land?

6        A.    Yes.

7        Q.    Okay.  And the private lands would be Section 25

8    and 31, right?

9        A.    Yes.

10       Q.    Okay.  You think you took this photo in 2021,

11   right?

12       A.    Yes.

13       Q.    Okay.  There's no T post or sign or anything in

14   this photograph, correct?

15       A.    Correct.

16       Q.    In 2020, was there any post or sign or anything?

17       A.    I was not there in 2020.

18       Q.    Okay.  So you don't know for what was there in

19   2020.

20       A.    Yes.

21       Q.    All right.  How did you -- did you cross that

22   corner?

23       A.    Not in 2020.

24       Q.    In 2021.

25       A.    Yes.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

                                                                              55

1        Q.      How?

2        A.      Stepped over it.

3        Q.      Okay.  Let's continue with Exhibit 9.  Do you

4    know where this corner is located?

5        A.      Yes.

6        Q.      Where at?

7        A.      Section 32 to 6.

8        Q.      Okay.  BLM to BLM, correct?

9        A.      Correct.

10       Q.      And the adjacent private lands would be Section

11   31 and Section 5, right?

12       A.      Yes.

13       Q.      Okay.  And I know you told me, but I'm going to

14   ask you again.  Did you cross this section in 2020?

15       A.      No.

16       Q.      Did you cross it in 2021?

17       A.      Yes.

18       Q.      The pipe upon which the brass cap is located is

19   bent over.  You see that?

20       A.      Yes.

21       Q.      Do you know how that happened?

22       A.      No.

23       Q.      There's a lot of downed timber and whatnot there,

24   right?

25       A.      Yes.

Iron Bar Holdings v. Bradly H. Cape, et al.       Case No. 22-CV-00067-SWS

58

1    A.    Yes.

2    Q.    All right.  Did you use the onX map -- or onX

3  map's application to locate that corner?

4    A.    Yes.

5    Q.    How did you cross that corner in 2021?

6    A.    Stepped over it.

7    Q.    Okay.  Let's turn to Exhibits 11 and 12.  I think

8  you said that those are of the same corner; is that right?

9    A.    Correct.

10    Q.    Okay.  Where is this corner located?

11    A.    Section 36 and 26.

12    Q.    So the private lands would be Sections 25 and 35,

13  right?

14    A.    Correct.

15    Q.    Okay.  Did you cross this corner in 2020?

16    A.    Yes.

17    Q.    Did you use the onX app to help you locate that

18  corner in 2020?

19    A.    Yes.

20    Q.    Did you cross this corner in 2021?

21    A.    Yes.

22    Q.    In both of those years, how did you cross the

23  corner physically?

24    A.    Stepped over it.

25    Q.    Okay.  All right.  In Exhibit 12, there's a

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

65

1      A.    No.

2      Q.    Were you contacted by Wyoming Game and Fish

3  officers?

4      A.    No.  For the 2020 case?

5      Q.    Yes, sir.

6      A.    No.

7      Q.    All right.  Well, so then did any other

8  government official, a person employed by any local, state

9  or federal government, contact you in 2020 in this area?

10     A.    I was sent a letter.

11     Q.    By whom?

12     A.    By the prosecutor's office of Carbon County.

13     Q.    And what did the letter say?

14     A.    The letter was asking me to agree to a plea

15  agreement.

16     Q.    Okay.  When did that letter -- when was that

17  letter sent to you?

18     A.    I believe that would have been in the winter,

19  January-February, of '21.

20     Q.    Was that letter sent to you before or after the

21  criminal charges were filed in 2021?

22     A.    Before.

23           MR. WEISZ:  Okay.  All right.  Could we go

24  off the record for just a moment, please?

25           THE VIDEOGRAPHER:  Off the record, 9:31.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

67

1    Q.    Okay.  So let's -- let's visit about that.  So

2    after you received the letter, what did you do?

3    A.    I called the prosecutor's office.

4    Q.    Okay.  Tell me about that conversation.

5    A.    I told them I received a letter to a plea

6    agreement, but that I have no citation.  I didn't know what

7    I was pleaing to, and he said that he would have to look

8    into that, that it was a pending case and he couldn't

9    discuss it.

10   Q.    All right.  Did you have any follow-up

11   communications with that gentleman?

12   A.    I waited two weeks for a call back, didn't

13   receive it, so I called them.  Again, he told me that I

14   must have received that by mistake.

15   Q.    Okay.  So just so the record is clear, at least

16   at that point in time you had not received a citation from

17   Carbon County, Wyoming, for your hunting activity in 2020?

18   A.    Correct.

19   Q.    All right.  Did there come a point in time when

20   you were charged by Carbon County -- well, the State of

21   Wyoming through the Carbon County Attorney's Office for

22   trespass activities in 2020?  Does my question make sense?

23   A.    It does.

24   Q.    Okay.

25   A.    Yes, there came a time.

Iron Bar Holdings v. Bradly H. Cape, et al.                          Case No. 22-CV-00067-SWS

77

1                    marked for identification.)

2        Q.    (BY MR. WEISZ)  All right.  You've been given

3   Deposition Exhibit 15.  What's depicted in this photograph?

4        A.    That is the ladder I constructed to go up and

5   over the signs.

6        Q.    There is a person depicted in the photograph.

7   Who is that?

8        A.    That is Zach.

9        Q.    Okay.  All right.  So tell me about the ladder.

10   Who -- I think you said one of you constructed it?

11        A.    I constructed it.

12        Q.    Okay.  What's it made out of?  What material?

13        A.    One and three-eighths fence pipe.

14        Q.    Okay.  Steel?

15        A.    Yes.

16        Q.    Did you weld it?

17        A.    Yes.

18        Q.    Okay.  All right.  So why did you bring this with

19   you in 2021?

20        A.    So we didn't have to touch the T post.

21        Q.    Okay.  So like you had done in 2020, right?

22        A.    Correct.

23        Q.    Okay.  All right.  So -- and I don't mean to be

24   flippant or argumentative, but why didn't you just go down

25   to the hardware store and buy a step ladder?

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

79

1     Q.    All right.  And whoever took the photograph is

2  standing behind this steel T post that's in the foreground,

3  right?

4     A.    Yes.

5     Q.    Okay.  Do you know whether that is BLM land where

6  that third steel T post is located?

7     A.    I believe -- no.  It's going to be really close

8  to the line, but I'm not for sure.

9     Q.    So you don't know whether that particular T post

10  is on private land or public land.

11     A.    I believe it's on shared land.  I believe it's on

12  the property line.

13     Q.    Okay.  All right.  At what locations did you use

14  the ladder?

15     A.    That one (indicating).

16     Q.    When you crossed that corner, I assume you

17  stepped on the bars and you went up and over, right?

18     A.    Yes.

19     Q.    How many times did you do that in 2021?

20     A.    So I can't sit here and answer that, no, but I

21  know that we have answered it in our interrogatories.  I

22  know -- I don't know how many times.  Sitting here, trying

23  to testify to it, I don't know.

24     Q.    Okay.  Fair enough.

25     A.    Numerous times.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

80

1      Q.     Numerous times.  And that's all I was looking

2   for.

3      A.     Okay.

4      Q.     More than once, right?

5      A.     Yes.

6      Q.     Okay.  So when you created that ladder and you

7   brought it to Wyoming, the first time, obviously, you took

8   it up to that section corner, right?

9      A.     Yes.

10     Q.     Did you leave it there the entire time you were

11  hunting in 2021?

12     A.     Yes.

13     Q.     Okay.  So you didn't take it with you further up

14  the mountain.

15     A.     No.

16     Q.     Did you leave it at that exact location?

17     A.     No.  I believe we laid it over on its side.

18     Q.     Okay.  Why did you do that?

19     A.     So it couldn't be seen.

20     Q.     Okay.  And again, I'm not trying to be accusatory

21  when I ask this question, but why did you not want it to be

22  seen?

23     A.     I didn't want anybody to steal my ladder.

24     Q.     Okay.  Do you still have the ladder?

25     A.     Yes.

81

1       Q.      At your house in Missouri?

2       A.      Yes.

3       Q.      Okay.  All right.  So when you crossed the other

4    corners in Section -- in 2021, you did not take that ladder

5    to those locations.

6       A.      Correct.

7       Q.      When you saw the "No Trespassing" sign that's

8    depicted in Exhibit 7, did -- what, if anything, did the

9    words "No Trespassing" mean to you?

10      A.      Don't go here.

11      Q.      Okay.  And what is your understanding of "here"?

12      A.      The private land.

13      Q.      Okay.  All right.  And did you go onto the

14   private land?

15      A.      No.

16      Q.      Okay.  Do you know whether it would be possible

17   for a person to go between the two fence posts across the

18   corner by ducking under the chain?

19      A.      That would be hard to do.  I couldn't do it.

20      Q.      Okay.  There is a phone number for Elk Mountain

21   Ranch shown on the signs in Exhibit 7, right?

22      A.      Yes.

23      Q.      Did you ever call that number and ask for

24   permission to go across that section corner?

25      A.      No.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

86

```
 1      Q.    And you've declined, right?

 2      A.    Yes.  Declined or ignored.

 3      Q.    Either one.  Okay.  And just so the record's

 4   clear, you did visit with Steven Rinella, right?

 5      A.    Yes.

 6      Q.    Why did you decide to do that?

 7                 MR. SEMERAD:  Objection.  Asked and

 8   answered.

 9      Q.    (BY MR. WEISZ)  You can answer, please.

10      A.    I was asked to.

11      Q.    Okay.  Well, then that begs the next question.

12   Why, when other people have asked you, that you've either

13   declined or ignored?

14      A.    You asked me why I decided --

15      Q.    Yeah.  Why talk to him but not the others.

16      A.    I like his show.

17      Q.    What's your favorite part of his show, the

18   cooking parts or the hunting parts?

19      A.    Probably the cooking parts.

20      Q.    Yeah, I agree.  Okay.  All right.  Do you agree

21   that you crossed through the airspace above the Iron Bar

22   Holdings, LLC land when you crossed the corner at Sections

23   14 and 24?

24      A.    No.

25      Q.    Tell me how you could cross that corner without
```

87

1    crossing the airspace above the surface of the private

2    property?

3         A.    Well, I believe it's a common shared airspace.  I

4    don't believe I ever -- I know I never crossed private

5    airspace.

6         Q.    And perhaps my question, I think I asked it in

7    the manner I intended.  My question was do you agree that

8    you passed through the airspace above the surface of the

9    Iron Bar private property?

10        A.    No.

11        Q.    I'm not asking you who owns that.  I'm asking you

12   whether you crossed through that space, regardless of who

13   owns that airspace.

14        A.    Did I cross through airspace?

15        Q.    Yes, sir.

16        A.    Yeah, I assume I'm in airspace.

17        Q.    Okay.

18        A.    But I didn't cross through any private airspace.

19        Q.    And that wasn't my question.  My question was --

20        A.    That's what I heard.  Sorry.

21        Q.    Okay.  And just to be crystal clear, I'm not

22   asking you whether you think the airspace above the Iron

23   Bar property is owned by Iron Bar.  I'm simply asking you,

24   regardless of who owns that or whether you had a right to

25   cross through it, do you agree that you did cross through

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

88

1    that airspace that's physically located above the Iron Bar

2    surface?

3        A.    I'm not understanding the difference in what I

4    answered and what you're asking.

5        Q.    Well, from your answer, you said that that's a --

6    I think you said it's a shared airspace or something like

7    that.  My question is you agree with me that when you look

8    at the map of the Iron Bar property, this depicts the

9    surface, right?

10       A.    Yes.

11       Q.    And you agree -- do you agree with me that above

12   that surface is airspace?

13       A.    Yes.

14       Q.    Okay.  You crossed through that airspace.  Again,

15   I'm not asking you who owns it or whether you had a right

16   to, but you physically cross through that airspace, right?

17       A.    Through air.

18       Q.    Okay.  All right.  And you agree with me that the

19   legal question of whether you had a right to do so is one

20   of the things we're going to answer in this case, right?

21       A.    I agree to that, yes.

22       Q.    Okay.  That's all I was trying to --

23       A.    Okay.

24       Q.    -- to get is you acknowledge you crossed through

25   that airspace.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

89

1      A.     I crossed through airspace.

2      Q.     Thank you.  All right.  You own -- you own land,

3   right?

4      A.     Yes.

5      Q.     Real property.  Do you consider the airspace

6   above the surface of your land to be your property?

7      A.     I've never considered -- never thought about it.

8      Q.     Okay.  Have you constructed anything on your

9   property on the surface that goes into the airspace above

10   the surface?

11      A.     Yes.

12      Q.     Buildings?

13      A.     Yes.

14      Q.     Okay.  But you don't know whether the airspace

15   above your land is your property.  Is that your testimony?

16      A.     Yes.  Where the -- where I have constructed is my

17   property.

18      Q.     Okay.  So to be clear, with regard to your land

19   and where you built buildings, you claim ownership of the

20   airspace above the surface.

21      A.     Yes.

22      Q.     Okay.  Can you tell me how that would be

23   different than the corner crossing that took place at the

24   Elk Mountain Ranch area?

25      A.     One's construction, one's not.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

105

 1       Q.     Warden Miller?

 2       A.     Yes.

 3       Q.     Okay.  Now, back in 2020, there was a

 4    conversation that we had about this letter you received

 5    from the Carbon County Attorney's Office, Mr. Nugent, I

 6    believe; is that right?

 7       A.     Yes.

 8       Q.     Okay.  Outside of that letter, though, when you

 9    were actually on Elk Mountain in Carbon County, you, Zach

10    and Phil, were you issued a citation?

11       A.     No.

12       Q.     Were you issued a written warning?

13       A.     No.

14       Q.     Were you given a verbal or oral warning to not

15    proceed?

16       A.     No.

17       Q.     Did the sheriff's deputy, Deputy Hawks, or Hawk,

18    tell you to stop corner crossing or to otherwise not travel

19    on those public land sections?

20       A.     No.

21       Q.     Did you complete your hunt in 2020 without

22    interruption or a demand to stop by law enforcement?

23       A.     Yes.

24       Q.     In 2021, were you able to complete your hunt?

25       A.     No.

Iron Bar Holdings v. Bradly H. Cape, et al.                    Case No. 22-CV-00067-SWS

106

1      Q.    Why not?

2      A.    We were issued citations.

3      Q.    Did there come a time when Warden Miller or

4   anyone else called you to tell you to come off the

5   mountain?

6      A.    Yes.

7      Q.    And when you were told to come off the mountain,

8   did you?

9      A.    Yes.

10     Q.    And did you return to your camp on Section 14?

11     A.    Yes.

12     Q.    Were you told to stay there?

13     A.    Yes.

14     Q.    Did you stay there?

15     A.    Yes.

16     Q.    You did not return after you were told to stay on

17   Section 14?

18     A.    We did not return back up onto the mountain.

19     Q.    You did not go back into Section 24 or elsewhere

20   after you were told to return.

21     A.    No.  I think we were told to stay right there.

22     Q.    Sure, sure.  After you were cited, each of you

23   issued a letter to the game warden, I believe, or perhaps

24   the Sheriff's Office about your experiences during your

25   hunt?