Ryan A. Semerad, Esq.
Wyoming Bar No. 7-6270
**THE FULLER & SEMERAD LAW FIRM**
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

Lee Mickus, Esq.
Wyoming Bar No. 7-5698
Alexandria Layton, Esq.
Wyoming Bar No. 7-6457
**EVANS FEARS & SCHUTTERT LLP**
3900 E. Mexico Avenue, Suite 1300
Denver, Colorado 80210
Telephone: 303-656-2199
Facsimile: 702-805-0291
Email: lmickus@efstriallaw.com
           alayton@efstriallaw.com

*Attorneys for Defendants Bradly H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

| | |
|---|---|
| IRON BAR HOLDINGS, LLC, a North Carolina limited liability company registered to do business in Wyoming,<br><br>          Plaintiff,<br><br>     vs.<br><br>BRADLY H. CAPE, an individual, ZACHARY M. SMITH, an individual, PHILLIP G. YEOMANS, an individual, and JOHN W. SLOWENSKY, an individual,<br><br>          Defendants. | **CASE NO. 22-cv-00067-SWS** |

**DEFENDANTS' PROPOSED STIPULATED FACTS PER INITIAL PRETRIAL ORDER**

1

Pursuant to the *Initial Pretrial Order* (ECF No. 31), Defendants Bradly H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky (collectively, "Defendants"), by and through their undersigned attorneys, submit the following proposed stipulated facts, with which Plaintiff Iron Bar Holdings, LLC ("Plaintiff") does not agree. Without repeating any facts to which the parties have already stipulated, Defendants represent the following facts are not disputed and should be stipulated to by all parties:

1. Land surveyors enlisted by the DOI first plotted the property boundaries on Elk Mountain in the late 1870s. They first surveyed the township lines of T. 20N, R. 82W and T. 20N, R. 81W in August 1877, and the interior section lines in July 1878. In doing so, these surveyors used whatever materials they could find in the field to monument property corners, including wood posts, stones, and dinosaur bones. In 1967 (and in one instance in 2012), the original corner monuments were replaced with uniform iron posts with die-cast brass caps during dependent resurveys authorized by the U.S. Bureau of Land Management ("BLM"). The original monuments were buried alongside the new "brass caps."

2. Plaintiff holds cattle grazing permits from the BLM with respect to certain sections of federally owned public land that adjoin Plaintiff's titled lands, including Sections 14, 24 and 30, and is aware that these grazing permits require Plaintiff comply with certain regulations, including that "Iron Bar cannot limit access to the BLM land."

3. When Plaintiff purchased the land described above, Plaintiff's sole member, Dr. Eshelman's belief that so-called "corner crossing" is illegal was "a condition of [his] having purchased [the property identified above]."

4.      The corner of Section 14 and Section 24 (the "First Corner") is the primary access point from which the public may reach the public lands on Elk Mountain—the "first corner" accessible from a public road onto public land.

5.      Plaintiff installed the lock and chain to prevent members of the public from crossing through the airspace above the shared corner of Sections 13, 14, 23 and 24, obstructing access to the public lands situated on Section 24 and beyond.

6.      The lock and chain presented physical obstacles to anyone attempting to walk across the First Corner to access public land on Elk Mountain.

7.      Any person carrying a backpack, hunting gear, or camping equipment could not pass through this obstacle to reach the public lands on Section 24 or beyond.

8.      Apart from the "No Trespassing" signs with the chain and lock, Plaintiff did not install or maintain any fences, fence posts or other boundary markers on its property within a quarter-mile of the First Corner.

9.      Other than at the First Corner, Plaintiff has not erected "No Trespassing" signs connected by a chain and lock similar to the equipment present at the First Corner near any other section corner markers shared with public lands.

10.     Plaintiff did not erect or maintain any similar physical obstructions at any other section corners because this section corner was the First Corner and, if it was blocked, a person could not reach any other public lands to the south or east on Elk Mountain.

11.     Plaintiff has never conferred with the BLM to obtain approval to place the t-posts, signs, chain, and lock surrounding the First Corner.

12.     Plaintiff recognizes that, other than by walking from Section 14 to Section 24 at the corner shared by these two sections of public land, Section 24 and the public lands beyond Section 24 are otherwise completely inaccessible on foot.

13.     Nevertheless, Plaintiff holds the position that no person can walk from Section 14 to Section 24 through the First Corner without Plaintiff's permission.

14.     Since purchasing the property, Plaintiff has not granted permission to any member of the public seeking to enter the public lands on Elk Mountain by crossing the First Corner, although Plaintiff's sole member uses and hunts these public lands and allows employees and personal friends or guests to access the public lands by other means.

15.     Plaintiff acknowledges that it is not possible for any person to cross diagonally from public land to public land across a section corner shared with private lands without some minimal intrusion into the airspace above the private lands.

16.     Since approximately 2009-2010, Plaintiff has employed an ongoing practice of verbally understood steps to address any person found on the public lands on Elk Mountain, even if that person never touched Plaintiff's private land.

17.     If Plaintiff observes a member of the public on the public lands on Elk Mountain, Plaintiff will confront that person as a suspected trespasser and urge them to leave the area.

18.     Plaintiff's purpose in confronting "suspected trespassers" is to deter members of the public from accessing public lands on Elk Mountain by crossing the First Corner.

19.     Following this initial confrontation, if the "suspected trespasser" acquiesces to Plaintiff's demands and leaves the area, Plaintiff takes no further action against the person.

20.     If Plaintiff learns that the person crossed the First Corner to get to public land and the person refuses to leave public land after this confrontation, Plaintiff will contact local law

enforcement, including the Carbon County Sheriff's Office, the Wyoming Game & Fish Department, to seek a criminal trespass citation or prosecution.

21. If law enforcement initially declines to cite the "suspected trespasser" for crossing the First Corner, Plaintiff's policy is to continue contacting that same or other law enforcement agencies to seek "citations written or arrests made."

22. If local law enforcement continues to take no action, Plaintiff will contact the Carbon County Attorney's Office to inquire about citations or criminal prosecution.

23. If these steps do not remedy the "suspected trespasser," then the next step in Plaintiff's practice is to institute civil legal action, which was first necessitated by this case.

24. In 2020, Defendants Cape, Smith, and Yeomans hunted the public lands on Elk Mountain and each man had a valid hunting license or tag to hunt in the area.

25. Mr. Slowensky was not present during the hunt in 2020.

26. In 2020, Plaintiff's obstruction at the First Corner prevented Defendants from traveling directly over the corner to the public lands beyond.

27. Because of the obstacle Plaintiff erected at the First Corner, Defendants were required to travel around the obstruction to enter the public lands to the southeast. Specifically, the three Defendants grabbed one of the t-posts and stepped around the obstruction without touching the private lands and then visually identified and stepped over the corner monuments at all other section corners.

28. Plaintiff's agent, Mr. Grende, confronted these three Defendants on public land about how they had traveled to get there.

29. Mr. Grende claimed that, because these Defendants grabbed Plaintiff's obstruction at the First Corner, they had trespassed on private land.

30. When Defendants refused Mr. Grende's orders to leave Elk Mountain, Mr. Grende repeatedly reported Defendants to local law enforcement authorities.

31. Local law enforcement spoke with these three Defendants, but did not issue them any citations or give them any warnings about their "corner crossing."

32. During Defendants' 2021 hunt, Mr. Grende and other Plaintiff employees watched Defendants by parking their vehicles nearby while Defendants were on public lands, including when Defendants were hunting and walking in the middle of public parcels, and relieving themselves.

33. Mr. Grende and other employees also drove up behind or next to Defendants throughout their hunt.

34. Specifically, during Defendants 2021 hunt, Mr. Grende and these employees confronted Defendants, including by stating, "What the fuck?" upon seeing Defendants on public land and claiming that they "weren't allowed to be here."

35. After Defendants refused to leave, Mr. Grende followed within 30 yards of the Defendants for a half mile and told them he was tracking their location. On the morning of October 1, 2021, two of Plaintiff's agents approached Defendants on a blue side-by-side vehicle while they were glassing a mule deer and ran the deer off.

36. As in 2020, after observing the Defendants hunting on public lands, Mr. Grende repeatedly reported Defendants to local law enforcement.

37. Once again, local law enforcement refused to issue any citations for Defendants' "corner crossing" at the First Corner.

38. In response, Mr. Grende claimed that "his boss" would shut all the lands down in the area and questioned whether law enforcement knew how much money and land "his boss" had.

6

39. During the 2021 hunt, Mr. Grende also entered into Defendants' private tent and stated, "You're the same guys from last year," and Game & Fish Warden Jake Miller had to escort Mr. Grende away to calm Mr. Grende and de-escalate the situation.

40. After local law enforcement, including the Carbon County Sheriff's Office and the Wyoming Game & Fish Department, determined they would not issue criminal citations to Defendants at Plaintiff's request, Plaintiff contacted the Carbon County Attorney's Office directly to demand Defendants be prosecuted.

41. Following this direct contact from Dr. Eshelman, the Carbon County Attorney's Office directed the Carbon County Sheriff's Office to issue citations for criminal trespass to Defendants and Warden Miller ordered Defendants to leave the public lands beyond the First Corner.

42. When Defendants were ordered off the public lands in 2021, Defendant Slowensky had not filled his tag, leaving his hunt incomplete.

43. Defendants' hunt ended approximately 4 days earlier than they had originally planned.

44. The State's criminal case against Defendants regarding the 2021 hunt proceeded to a jury trial at which each Defendant was acquitted of all charges on April 29, 2022.

45. On February 15, 2022, Plaintiff filed its original complaint against Defendants in this case in the Second Judicial District Court, Carbon County, Wyoming, asserting that Defendants committed a civil trespass on Plaintiff's private property by crossing the First Corner and other section corners at which Plaintiff's private land meets public land. Plaintiff seeks damages, a declaratory judgment that corner crossing always constitutes a trespass and requesting a permanent injunction forever barring any person from crossing the First Corner.

46. Plaintiff has previously claimed damages against Defendants as follows:

$10.00 for "[c]ivil trespass damages arising from Defendants' conduct – implied at law;"

$3,100,000 to $7,750,000 for "[e]stimated actual damages arising from Defendants' conduct: 10% - 25% diminution of value of Iron Bar Holdings, LLC real property (subject to revision);"

$7,500.00 for "[e]stimated extra employee time, fuel, interference with military veteran hunting program, interference with other operations to deal with unlawful trespass across ranch;" and

"$TBD" for "[d]amages arising from Defendants' contention that any person may cross Plaintiff's private property without its permission to reach adjacent lands;" and

"$TBD" for "[c]osts, fees, and expenses related to this action."

47. Plaintiff has since withdrawn its request for damages against Defendants.

48. Plaintiff requests that this Court declare that crossing from public-to-public land at a shared corner in the Checkerboard lands of Wyoming is always an unlawful trespass on private property.

49. Plaintiff also seeks an injunction permanently restraining Defendants and any other member of the public from accessing public land by crossing from public-to-public land at a corner shared by the public lands and Plaintiff's private property.

50. Plaintiff has no evidence that any Defendant contacted the surface of Plaintiff's private land at any point in 2020 or 2021.

51. Plaintiff has no evidence that any Defendant contacted any fixtures such as fences, signs, posts or equipment located on Plaintiff's privately-held land at any point in 2021.

52. Plaintiff has no evidence that any Defendant damaged the ground of Plaintiff's private land, structures, or fixtures (fences, signs posts, equipment, etc.) at any point in 2020 or 2021.

53.     Plaintiff has not made any repairs to the ground, structures, or fixtures (fences, signs posts, equipment, etc.) on its private land—nor were any repairs necessary—due to Defendants' actions in 2020 or 2021.

Dated: May 17, 2023.               THE FULLER & SEMERAD LAW FIRM

                                   By: /s/Ryan A. Semerad
                                       Ryan A. Semerad, Esq.
                                       Wyoming State Bar No. 7-6270
                                       242 South Grant Street
                                       Casper, Wyoming 82601
                                       Telephone: 307-265-3455
                                       Facsimile: 307-265-2859
                                       Email: semerad@thefullerlawyers.com

                                       Lee Mickus, Esq.
                                       Wyoming Bar No. 7-5698
                                       Alexandria Layton, Esq.
                                       Wyoming Bar No. 7-6457
                                       EVANS FEARS & SCHUTTERT LLP
                                       3900 E. Mexico Avenue, Suite 1300
                                       Denver, Colorado 80210
                                       Telephone: 303-656-2199
                                       Facsimile: 702-805-0291
                                       Email: lmickus@efstriallaw.com
                                              alayton@efstriallaw.com

                                       *Attorneys for Defendants Bradly H. Cape, Zachary M. Smith, Phillip G. Yeomans, and John W. Slowensky*

## CERTIFICATE OF SERVICE

I certify that on the 17th day of May, 2023, I electronically filed the foregoing instrument with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Ryan A. Semerad
The Fuller & Semerad Law Firm